## KEITH v. KELLERMANN.

(Circuit Court, S. D. New York.  March 29, 1909.)

1. PARTNERSHIP (§ 9*)—CONTRACT—CONSTRUCTION.
    A contract for acrobatic performances described plaintiff as the "manager" and defendant as the "performer"; defendant agreeing to perform special acts on such days and at such times as plaintiff should direct. Defendant agreed not to perform except with plaintiff's consent; plaintiff agreeing in the summer season to meet all expenses necessary for the production of defendant's exhibition with the option to renew for succeeding summer seasons and pay defendant one-half of the proceeds after running expenses had been deducted.  *Held,* a contract of employment, and not a partnership.

    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 23, 24;  Dec. Dig. § 9.*]

2. PARTNERSHIP (§ 1*)—WHAT CONSTITUTES—AUTHORITY OF PARTNERS.
    The test of "partnership" is whether the parties are jointly interested as principals and may bind each other by their acts or engagements within the scope of the enterprise.

    [Ed. Note.—For other cases, see Partnership, Dec. Dig. § 1.*

    For other definitions, see Words and Phrases, vol. 6, pp. 5191–5202; vol. 8, pp. 7746–7747.]

3. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION.
    Two contracts were made between plaintiff and defendant on the same day; the first employing defendant to perform certain acrobatic feats at plaintiff's places of amusement during the winter seasons of 1908 and 1909 at $300 per week, with plaintiff's right to renew the same on giving a specified notice, and defendant binding herself not to perform except in accordance with plaintiff's directions.  The other contract covered the summer season of 1909, with the right to renew for subsequent summer seasons; defendant to receive one-half of the net profits.  *Held,* that the two agreements should be construed as constituting one contract.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 3.*]

4. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION— EQUITABLE MUTUALITY.
    A contract for acrobatic performances required defendant to perform in such theaters and other places and on such days as might be designated by plaintiff, and required that plaintiff pay defendant $300 at the end of each week after the last performance on Saturday for services rendered or produced by defendant as previously provided.  *Held,* that the contract should not be construed as imposing no obligation on plaintiff to designate and provide places and days for defendant's performances, nor as relieving plaintiff from the obligation to pay plaintiff in case he should refuse or omit to designate such times and places, and did not therefore lack equitable mutuality.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 3.*]

5. INJUNCTION (§ 60*)—SUBJECTS OF RELIEF—EMPLOYMENT CONTRACT.
    Defendant, an acrobatic performer, whose performances in diving and swimming were unique, and who could not be replaced, contracted to perform for plaintiff at such places as he should designate during the winter seasons of 1908 and 1909 for $300 per week; plaintiff at his option being entitled to renew the contract by giving notice for the seasons of 1910 and 1911, and defendant agreeing not to present any act or specialty in any place other than those designated by plaintiff, or for any other person than plaintiff, without his consent during the term of the contract

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or of any renewal. *Held,* that defendant having refused to continue to perform, and having made a new contract with plaintiff's principal competitor for a term beginning March 22, 1909, plaintiff was entitled to an injunction restraining her from performing for any one other than plaintiff during the remainder of the seasons of 1908 and 1909, and the seasons of 1909 and 1910; plaintiff having exercised his option to renew the agreement for the latter season.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 118; Dec. Dig. § 60.*]

6. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—ENFORCEMENT— MUTUALITY OF OBLIGATION.

Where a contract for the employment of defendant to perform certain acrobatic feats, under plaintiff's management and at such places as he should designate during the summer season, neither expressly nor by necessary implication fixed any periods when such performances should be given, and plaintiff for any reason satisfactory to him might omit exhibitions during any part of the season during which defendant would be without compensation, though bound not to work for any one else, such agreement was unenforceable against defendant for want of mutuality of obligation.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 3.*]

7. SUNDAY (§ 17*) — EMPLOYMENT CONTRACT — CONSTRUCTION — "DAYS" — "WEEK."

An acrobatic performer's contract provided that she should receive $300 at the end of each "week" after the last performance on Saturday for services rendered, to be performed at such theaters and such other places and on such "days" as might be determined by plaintiff. *Held,* that it was no objection to the enforcement of such contract by injunction that it provided for exhibitions on Sunday, in violation of statute, since, if such exhibitions were prohibited, the words "days" and "week" as used in the contract would be construed to mean week days only.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 48, 49; Dec. Dig. § 17.*

For other definitions, see Words and Phrases, vol. 2, pp. 1832–1837; vol. 8, pp. 7427, 7428, 7626.]

Maurice Goodman (Henry W. Taft, of counsel), for complainant.

George M. Leventritt (William D. Guthrie and Benjamin N. Cardozo, of counsel), for defendant.

WARD, Circuit Judge. October 17, 1908 at Boston, Mass., the parties executed the following agreements:

"Agreement made this 17th day of October, 1908, between Benjamin F. Keith of Brookline in the county of Norfolk and commonwealth of Massachusetts, hereinafter called the first party, and Annette Kellermann at present of Boston in the county of Suffolk and said commonwealth, hereinafter called the second party, witnesseth that in consideration of the promises of each of the parties herein set forth it is agreed as follows:

"First. The second party agrees to render professional services for the first party from the 19th day of October, 1908, to the 3d day of May, 1909, in performing the following acts, to wit, trick and fancy diving, toe dancing, Diabolo, as many times, in such theaters and other places and on such days as may be determined by said first party.

"Second. Said second party agrees not to present either privately or publicly during the term thereof, or any renewal hereof as hereinafter provided, any act or specialty in any place other than those designated by the first party or for any person other than the first party without the consent of said first

party in writing, and a violation hereof shall entitle the first party to cancel this agreement.

"Third. The second party agrees to eliminate any portion of her acts or performances whenever so requested by said first party or his representatives and agrees to abide and be bound by rules and regulations now or hereafter adopted by said first party in his various theaters.

"Fourth. The first party agrees to pay the second party three hundred dollars ($300.00) at the end of each week after the last performance on Saturday for services rendered or produced by said second party* as hereinbefore provided, provided, however, that said second party complies with each and every agreement and condition by her to be kept and performed as above set forth.

"Fifth. If the first party is prevented by fire or by public authority, city, state or federal, from operating any theater wherein the second party is to perform or produce hereunder, the first party may cancel this agreement for the time that he is prevented from so operating.

"Sixth. This contract shall be renewed with all its conditions and agreements on the part of both parties to be kept and performed for any one or all of three theatrical seasons each of thirty weeks and beginning on the 4th day of October, in the year 1909, on the 3d day of October, in the year 1910, and on the 2d day of October, in the year 1911, if the first party desires to renew said contract and notifies the second party that he intends so to renew on or before the 15th day of August in each of said years. Such notice shall be sufficient if sent by the first party by mail to the last and usual place of abode of said second party known to said first party.

"In witness whereof said parties have hereunto set their hands and seals this 17th day of October, 1908."

"Agreement made this 17th day of October, 1908, between Benjamin F. Keith of Brookline in the county of Norfolk and commonwealth of Massachusetts, hereinafter called the manager, and Annette Kellermann now of Boston in the county of Suffolk and said commonwealth, hereinafter called the performer, witnesseth that in consideration of the promises of each of the parties herein set forth it is agreed as follows:

"First. The performer agrees that during the summer season of the year 1909 she will solely under the management and direction of the manager render her professional services as a performer in the open air and elsewhere in such acts, in such places, on such days, and at such times, as the manager directs. Said season is to begin as soon after the 1st day of June, 1909, as the weather conditions permit and suitable fittings and other necessary preparations have been made for the production of said services, but in no case later than the 1st day of July, and is to terminate on such date in the month of September in said year as the manager shall determine.

"Second. Said performer further agrees that during said summer season and during the period between the close of her engagement with said manager for the season of 1908–09, as provided in another agreement between the same parties dated the 17th day of October, 1908, and the opening of said summer season, she will perform or exhibit in no places other than those determined by the manager without his consent in writing, nor will she accept any engagement or make any contract so to operate without said consent in writing.

"Third. Said manager agrees to assume all expense necessary or incidental to the fitting up and getting ready for the production of the performer's acts and exhibitions as herein provided.

"Fourth. It is further agreed by both parties that the proceeds of the enterprises herein provided for, after all running expenses have been deducted, shall be equally divided between said parties, but no salary or living expenses for either party is to be included in said running expenses.

"Fifth. It is further agreed that this contract with all its agreements and conditions on the part of both parties to be performed shall be renewed for any or all of the summer seasons, and for the periods between the winter and summer seasons so far as applicable thereto, in the years 1910, 1911 and 1912 if the manager desires so to renew and gives notice of his intention so to renew to the performer on or before the 15th day of May in each of said years, and said seasons are to begin and terminate as is provided in this con-

tract for the summer season for the year 1909. A notice to the performer will be sufficient if sent to the last and usual place of abode of the performer known to the manager."

It will be seen that together the documents cover public performances to be given by the defendant from October 19th to May 3d, called the winter season, and from June 1st or as soon thereafter as the weather should permit and the necessary preparations could be made, but not later than July 1st, to such date in September as the plaintiff should determine, being the summer season. Between the two seasons the defendant agreed not to perform anywhere except with the plaintiff's consent.

The defendant, admitting that the first agreement is one for employment, contends that the second is a partnership; but I think that it is also a contract for employment. The plaintiff is described as the "manager," the defendant as the "performer." The defendant agrees to perform in such acts on such days and at such times as the plaintiff shall direct. Between the winter and summer seasons the defendant agrees not to perform at all except with the plaintiff's consent. The plaintiff is to meet all expenses necessary for the production of the defendant's exhibitions and has the option to be declared on or before May 15th, in each year to renew the contract on the same conditions for the summer seasons of 1910, 1911, 1912, or either of them.

While it is true that the sharing of profits is a most distinctive feature of partnerships, such sharing in the case of contracts for the loan of money or for personal services is generally a method of measuring conpensation. The real test of partnership is whether the parties are jointly interested as principals and may bind each other by their acts or engagements within the scope of the enterprise. Cassidy v. Hall, 97 N. Y. 159, 168; Berthold v. Goldsmith, 24 How. 536, 16 L. Ed. 762. I think it impossible to say that the defendant can be regarded as authorized to bind the plaintiff by her acts or promises. At all events, this suggestion is relevant only upon the objection that the bill is multifarious because including two contracts of a different nature, an objection apparently abandoned by the defendant on this motion, and to be properly raised upon plea, answer, or demurrer.

March 4, 1909, the plaintiff exercised his option of renewing the agreement upon the same conditions for the winter season of 30 weeks from October 4, 1909. The bill treats the two agreements as constituting one contract, and the defendant throughout her printed brief acquiesces in this construction, which seems to me the right one. Joy v. St. Louis, 138 U. S. 1, 38, 11 Sup. Ct. 243, 34 L. Ed. 843. The defendant refused to continue to perform her contract with the plaintiff and made a new agreement for 51 consecutive weeks beginning March 22, 1909, for higher compensation, with his principal business competitor. Thereupon the plaintiff filed this bill, obtained an order to show cause why a preliminary injunction restraining the defendant from performing for any one but himself down to the 1st of May, 1910, with a restraining order in the meantime upon giving security in the sum of $5,000 to respond in damages in case it should be found to have been improperly granted. Without going into the details, the affidavits

make it entirely clear: That the defendant's performances in diving and swimming are unique; that she cannot be replaced; that the plaintiff, if deprived of her services, will be subjected to great loss, impossible of satisfactory measurement; that the plaintiff is and always has been ready and willing to perform his part of the contract fully; but that the defendant has abandoned the contract solely for the purpose of making a more profitable engagement with the plaintiff's principal business competitor.

The defendant contends that no injunction should issue because the contracts either construed separately or together lack equitable mutuality. It is said that article 1, regulating the winter season, which requires the defendant to perform "in such theaters and other places and on such days as may be designated" by the plaintiff, does not bind him to designate any theaters, places, or days at all. It is further said that article 4, which requires the plaintiff to pay the defendant "$300 at the end of each week after the last performance on Saturday for services rendered or produced by said second party as hereinbefore provided," does not require the plaintiff to pay anything if he has not designated any theater or place in or day on which the defendant is to perform. Such a construction is wholly unreasonable, and also unnecessary, because the contract admits of a reasonable one. If the action were by the defendant to recover damages at the rate of $300 a week for any week or weeks during the winter season in which the plaintiff refused or omitted to designate any time or place for her to perform, I think it perfectly clear that she could recover. The agreement, being capable of a construction consistent with fairness and common sense, should be given that construction in preference to one that is unreasonable, to the point of dishonesty. Coghlan v. Stetson (C. C.) 19 Fed. 727. If the contract should be so construed at law, a fortiori it should be so construed in equity. It presents every element to justify the issuance of an injunction in aid of its performance, viz., the uniqueness of the defendant's acts, the definiteness of the time of her employment, the certainty of the plaintiff's loss, and the difficulty of measuring it; the combination of a positive covenant to perform for the plaintiff, with the negative covenant to perform for no one else. McCaull v. Braham (C. C.) 16 Fed. 37.

On the other hand, the second part of the contract, regulating the summer season, seems to me to be open to the objection that it does lack equitable mutuality. Neither expressly nor by necessary implication does it fix the periods when performances shall be given. For business or other reasons satisfactory to him, the plaintiff might omit exhibitions during any part of the summer season. During such period there would be no proceeds to divide, and the defendant would be without compensation and at the same time under a covenant not to perform for any one else. The contract lacks in this respect the kind of mutuality which moves a court of equity to aid its performance by injunction. Shubert Theatrical Company v. Coyne (Sup.) 115 N. Y. Supp. 968. As in the cause cited, the defendant would receive compensation, if any, only for actual performances; whereas, under the

contract for the winter season she would be entitled to compensation for readiness to perform.

It is also objected that no injunction should be granted because the contract provides for exhibitions on Sunday, in violation of statute. It is true that exhibitions have been given on Sunday; the defendant claiming extra compensation on the ground that the contract does not cover, and the plaintiff refusing said compensation on the ground that it does cover, Sundays. The contract does not expressly so provide, and if such exhibitions on Sunday are in violation of the statute, which I do not decide, the parties should be taken not to have intended to vio· late the law, and to that end the words "days" and "week," wherever used, should be construed as not including Sundays.

The contract being divided into two entirely separable parts, one for the winter and the other for the summer season, I see no reason why the court should refuse the plaintiff equitable aid as to that part which admits of it, leaving the parties to their rights and remedies at law in respect to that part, the performance of which for the reasons stated should not be aided by equity.

I will sign an order restraining the defendant from performing for any one else than the plaintiff without his written consent during the remainder of the winter season of 1908–09, and during the winter season of 1909–10.