**MISSION INDEPENDENT SCHOOL DIST.
v. DISERENS.**

No. 11481.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 7, 1945.

Rehearing Denied March 7, 1945.

H. H. Rankin, Jr., of Edinburg, and Black, Graves & Stayton, of Austin, for appellant.

Kelley & Looney and L. Hamilton Lowe, all of Edinburg, for appellee.

MURRAY, Justice.

This suit was instituted by Mission Independent School District against Ethel Diserens seeking an order of the 92d District Court of Hidalgo County enjoining defendant from teaching music in the Cisco Independent School District at Cisco, Eastland County, Texas.

The trial court refused the injunction and dismissed the cause.

Mission Independent School District has prosecuted this appeal.

The facts are undisputed. For the purpose of this suit the defendant admitted the following allegations of plaintiff's petition:

"1. On or about May 1, 1944, plaintiff, Mission Independent School District, of Hidalgo County, Texas, entered into a contract in writing with defendant employing defendant as a teacher in plaintiff's public school system for the school year 1944–1945; a copy of the contract is attached to the petition, marked Exhibit 'A', and made a part thereof.

"2. The contract by its terms was performable in Mission, Hidalgo County, Texas, where the agreed compensation was to be paid.

"3. Defendant is a musician and teacher of extraordinary and unique talents and abilities.

"4. Defendant, in accordance with the terms of said contract, reported to and for work at the public school system of plaintiff on the 5th day of September, A. D.1944, and on said day and date commenced the performance of said contract. Thereafter, later in the day of the 5th day of September, A. D. 1944, the defendant advised plaintiff that defendant desired to be released from said contract. Whereupon plaintiff advised defendant that it would not release defendant from said contract. Defendant left Mission, Hidalgo County, Texas, on or about the 8th day of September, A. D. 1944, and has failed and refused and still fails and refuses to carry out said contract or any part or covenant thereof.

"5. Said contract provides among other things that defendant will not engage

in the profession of school teaching anywhere in the State of Texas during the life of said contract. And, in violation of the terms of said covenant defendant began and commenced to teach music and direct and teach band in the public schools of the Cisco Independent School District at Cisco, Eastland County, Texas, on or about the 11th day of September, A. D. 1944, and is now teaching said subject in the State of Texas in violation of said above covenant.

"6. Plaintiff is and has been willing at all times to offer defendant employment under the terms of said contract and here now tenders defendant the full rights and benefits of employment under said contract.

"7. Due to the war and the manpower shortage in the United States, it is difficult to obtain a music teacher and band director with the qualifications of defendant."

Appellant admits that it is not entitled to nor is it asking an injunction requiring appellee to perform the affirmative covenant in the contract to teach in the Mission School, but contends that it is entitled to an injunction prohibiting appellee from violating the negative covenant in her contract not to teach school in any other school in the State of Texas, and particularly in the Cisco School where she is now teaching. Appellant says that it is entitled to have such injunction as an inducement to appellee to perform the affirmative covenant in the contract to teach in the Mission School.

This is a case of first impression in this State and as far as we know there is no reported case exactly on all fours with this case; that is, where a teacher in a public school was involved.

We have been cited to Lumley v. Wagner, an early English case, 1852; Keith v. Kellerman, C.C., 169 F. 196; McCaull v. Braham, C.C., 16 F. 37; Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L.R.A. 227, 90 Am.St.Rep. 627; Tribune Ass'n v. Simonds, N.J.Ch., 104 A. 386.

In the Lumley case a very noted singer was enjoined from performing in other theatres where she had contracted not to do so during the existence of her contract.

In the Kellerman case, Annette Kellerman, America's first bathing beauty, was enjoined from performing for any one else during the time she had contracted to perform only for Keith.

In the Lajoie case "Nap" Lajoie, a very popular baseball player, was enjoined from playing with a rival club during the time he had contracted only to play with the Philadelphia Ball Club.

In the Simonds case Frank H. Simonds, a very famous war news writer during World War I, was enjoined from writing for other publications during the time he had contracted to write only for the New York Tribune.

However, it is apparent that in each of these cases the complaining party was not only injured by the failure of the defendant to keep his or her affirmative covenant, but was also injured directly by the breach of the negative covenant.

In the present case it is readily apparent that appellant is not injured in any way by appellee's breach of her negative covenant. In other words, the Mission School is not injured by appellee's teaching in the Cisco School. The only benefit the Mission School could receive if the injunction prayed for should be granted would be the possibility that appellee might be induced thereby to comply with her contract to teach in the Mission School.

We are impressed with the contention of appellee that such injunction should not be granted unless the breach of the negative covenant alone and apart from the breach of the affirmative covenant work a direct injury to the employer.

In the Restatement of the Law by the American Law Institute, Volume II of Contracts, Section 379, p. 702, it is stated:

"§ 379. Contracts for Personal Service.

"A promise to render personal service or supervision will not be specifically enforced by an affirmative decree.

"Comment: * * *

"c. Among the many varieties of personal service contracts to which the rule of the Section applies are those requiring performance as an actor, a singer, a sales-agent, a ball-player, a teacher, a mechanic, a valet, a cook, a railway gate-tender, a personal custodian of children. Among the contracts that are included are all contracts of employment creating the intimate relation of master and servant; the latter's performance is personal service and that of the former frequently involves personal supervision.

"d. The refusal of affirmative specific enforcement in these cases is based in part upon the difficulty of enforcement and of passing judgment upon the quality of performance, and in part upon the undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone. In some cases the decree would seem like the enforcement of an involuntary servitude.

"e. There may be negative promises in personal service contracts; within certain limits these may be specifically enforced by injunction (see § 380). * * *

"380. Enforcement of Negative Duties that Accompany Affirmative Promises.

"(1) An injunction against the breach of a contractual duty that is negative in character may be granted either

"(a) to prevent harm for which money damages are not an adequate remedy caused by the breach of the negative promise itself, even though there are accompanying affirmative promises by either party that will not be specifically enforced, unless such partial enforcement will lead to unjust or harmful results; or

"(b) as an indirect mode of specifically enforcing an accompanying affirmative promise, if it is likely to be effective for that purpose and if the affirmative promise is itself one that would be enforced by affirmative decree except for the mere practical difficulties of such enforcement.

"(2) A contract to render personal service exclusively for one employer will not be indirectly enforced by injunction against serving another person, if

"(a) the employer is not ready and willing to continue to perform his part of the contract; or

"(b) performance of the contract will involve personal relations the enforced continuance of which is undesirable; or

"(c) the injunction will leave the employee without other reasonable means of making a living; or

"(d) the service is not unique or extraordinary in character.

"Comment on Subsection (1): * * *

"e. The enforcement of a negative duty by injunction will not be granted unless the breach of the duty that is enforced would itself cause harm for which compensation in money is not an adequate remedy, or unless the purpose of the injunction is the indirect enforcement of some affirmative promise the breach of which will cause such harm. An injunction will not be used for the latter purpose when the reason for refusing an affirmative decree is not merely that too many practical difficulties are involved in such enforcement, but also that specific enforcement of the affirmative promise is itself undesirable. * * *

"Comment on Subsection (2):

"g. * * * In personal service cases, an injunction should practically never be used primarily as an indirect means of enforcing the affirmative promises; it should be restricted to cases where the breach of the negative promise will in itself cause irreparable harm. * * *

"Illustrations of Subsection (2): * * *

"8. A contracts to work for B as garage mechanic for one year and not to work in that capacity for anyone else during the year. A has such exceptional skill that his services are unique. In breach of his contract, A quits B's service and goes to work for an employer whose business is not in competition with that of B. B cannot get an affirmative decree for specific performance by A, not only because of difficulty of enforcement but also because of the rule stated in § 379; and since the breach of the negative promise does not in itself cause injury, B cannot get an injunction preventing A from working for this new employer. An injunction will not be granted merely for the purpose of indirectly compelling A to continue in B's service."

If the injunction should be granted herein it would be solely for the purpose of compelling, or at least of trying to induce, appellee to return to her employment with the Mission School. If it should fail in this it would do more harm than good, because not only would the pupils in the Mission School be denied the benefit of her extraordinary and unique talents and abilities, but the pupils in the Cisco School would likewise be deprived of these benefits. With positions so easy to secure during these war times, it occurs to us that such an injunction would in all probability not have the effect of causing appellee to return and teach in the Mission School.

It would seem to us that if the school authorities so desire they could secure the passage of laws by the Legislature

that would prevent our public schools from employing a teacher who had already contracted to teach in another public school, and that such laws would be much more effective and easy of enforcement than any system of injunction that might be conceived by the courts under existing statutes. As a matter of fact, we feel that we are not justified under existing laws to attempt to correct the evil shown to exist in this case.

The judgment is affirmed.