Mission Independent School District v. Ethel Diserens.

No. A-544. Decided June 13, 1945.
Rehearing overruled July 18, 1945.
(188 S. W., 2d Series, 568.)

*H. H. Rankin, Jr.,* of Edinburg, and *Black, Graves & Stayton,* of Austin, for petitioner.

Petitioner school district having suffered irreparable damage from the admitted breach of the contract, it was error for the courts below to refuse the injunction on the untenable grounds that the "breach of the negative covenant alone and apart from the breach of the affirmative covenant" did not work a direct injury to petitioner.. Singer Sewing Machine Co. v. Union Button Hole & Embroidery Co., 1 Holmes, 253 (Fed. Case 12,904), and other cases cited in the opinion.

*Kelley & Looney* and *L. Hamilton Lowe,* all of Edinburg, for respondent.

In the absence of some injury flowing directly from the breach of the negative convenant no equitable relief should be granted. Cort v. Lassard, 18 Oregon 221, 22 Pac. 1054 6 L. R. A. 653; Patterson v. Crabb, 51 S. W. 870; Erhman v. Bartholmew, 1 Ch. 671, 78 L. T. N. S. 646, 67 L. J. Ch. N. S. 319.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

Mission Independent School District and Ethel Diserens entered into a written contract by which she engaged herself to teach in the Mission, Texas, public schools at a stated salary for one year beginning September 1, 1944, and further agreed she would not teach anywhere else in the State of Texas during the contract period. She was a musician and teacher of extraordinary and unique talents and abilities and it was a difficult matter for the employing school district to obtain any other teacher with her qualifications. On September 5, 1944, she entered into the performance of her duties under this contract but later on the same day asked that she be released and upon this request being refused she breached her contract and in violation of its terms went to Cisco, Texas, where she took up teaching music and directing a band in the public schools. Mission Independent School District has been willing at all times to offer Ethel Diserens employment under the terms of the contract she breached.

With matters in this attitude, Mission Independent School District sued Ethel Diserens in the District Court of Hidalgo County where the contract of employment was performable, seeking to enjoin her from breaching the negative promise in the contract not to teach during the contract period elsewhere in the State of Texas than in the Mission public schools. The district court took the view that since there was no showing of injury to the plaintiff school district incident to the defendant's "teaching at Cisco separate from her failure to teach at

Mission," the injunction should not issue. The Court of Civil Appeals took substantially the same view and affirmed a judgment of the trial court denying the injunction. 186 S. W. (2d) 108. In this we conclude there was error.

Counsel for the defendant argue that the injunction was properly denied because (1) equity will not enforce specific performance of contracts of personal employment, (2) primary administrative jurisdiction rests in the Department of Education rather than the courts, and (3) the Cisco Independent School District, which is not sued, is a necessary party to this action.

■ As to the first contention, it is true that chancery courts have refused to grant mandatory injunctions specifically enforcing contracts for the performance of personal services. It has been said that this refusal is based in part upon the difficulty of enforcement and of passing judgment upon the quality of performance and in part upon the undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone. And in some cases, it has been observed, the decree would seem like the enforcement of an involuntary servitude. But to the contrary, it has also been pointed out that there may be negative promises in personal service contracts and within certain limits these may be enforced by injunction. Restatement of the Law, American Law Institute, Volume II of Contracts, Section 379; E. M. Goodwin, Inc., v. Stuart (Tex. Civ. App.), 52 S. W. (2d) 311, affirmed 125 Texas 212, 82 S. W. (2d) 632. These limits are well defined in the decisions, notably beginning with the leading case of Lumley v. Wagner, 1852, 1 De G. M. & G. 604, 42 English Rep. 687, and later in this country, in McCaull v. Braham, C. C. S. D. N. Y. 1883, 16 Fed. 37; Philadelphia Ball Club v. Lajoie, 1902, 202 Pa. 210, 51 A. 973, 58 L. R. A. 227, 90 Am. St. Rep. 627; Keith v. Kellermann, C. C. S. D. N. Y. 1909, 169 F. 196, Tribune Association v. Simonds, N. J. Ch., 1918, 104 Atl. 386; Cincinnati Exhibition Company v. Marsans, D. C. E. D. Mo. 1914, 216 Fed. 269.

In Lumley v. Wagner, supra, a famous singer agreed to appear in the complainant's opera house for a certain time during which she was not to sing for anyone else. The court held that the services were of such a character that damages would be inadequate and that therefore an injunction was proper to restrain the defendant from singing elsewhere. A comment in 4 Pomeroy's Equity Jurisprudence (4th Ed.), section 1711, states that in the Lumley v. Wagner case, the opinion "fully reviews

the previous authorities, and has been generally accepted, both in England and in this country, upon a similar state of facts." In the course of the opinion, the Lord Chancellor remarked that: "wherever this Court has not proper jurisdiction to enforce specific performance, it operates to bind men's consciences, as far as they can be bound, to a true and literal performance of their agreements; and it will not suffer them to depart from their contracts at their pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give."

And among the authorities in this country which have followed this doctrine, we note that United States Circuit Judge Walter H. Sanborn, in deciding the Marsans case, supra, declared it a settled rule "that where a person agrees to render services that are unique and extraordinary, and which may not be rendered by another, and has made a negative covenant in his agreement whereby he promises not to render such service to others, the court may issue an injunction to prevent him from violating the negative covenant in order to induce him to perform his contract."

The defendant comes fairly within the rule announced in these cases. She is a music teacher of extraordinary and unique talents and has engaged herself to devote those talents to teaching in the schools at Mission and not elsewhere in Texas during the contract period. The plaintiff school district finds difficulty in getting another teacher of her qualifications. It offers to extend to the defendant the benefits of the contract of employment she has breached. She ought not to be allowed to breach her contract at her pleasure and affirmatively violate the promise she made not to teach anywhere else in this State during the time embraced by the agreement. Accordingly, we conclude she should have been enjoined from violating the negative covenant in her contract.

We are not willing to restrict the doctrine laid down in the decisions so narrowly that it will include only such situations as obtained in Patterson v. Crabb, 51 S. W. 570 (writ dismissed) where the parties were competitors and loss of business would have resulted if the injunction had not issued. The principles involved have a broader scope. They should properly be applied "to bind men's consciences, as far as they can be bound, to a true and literal performance of their agreements." We conclude they are properly applicable to the situation of the plaintiff and defendant here.

■ The defendant contends that the courts should not take jurisdiction because it is contrary to public policy for "one department to interfere with the internal control and regulation of another department" and further, "appeal must be timely presented through school channels before a resort to the courts may be had." The defendant reasons that since she would ordinarily be compelled to submit a controversy between herself and the plaintiff school district to the proper school authorities before resorting to the courts, the plaintiff should likewise be obliged to exhaust available administrative remedies before applying to the courts for injunctive relief. We are aided in solving the problems thus posed by applying a general classification of those matters requiring resort to the school authorities before applying to the courts which is found in State v. Sanderson (Tex. Civ. App.), 88 S. W. (2d) 1069: "It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact as distinguished from pure questions of law resort must first be had to the school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction of a complaint with reference to such matters."

In this case, there are no controverted questions of fact, all of which were agreed upon by the parties in the trial court. There was left for decision only a pure question of law and obviously, immediate resort to the courts was proper in such a situation. No circumstances have been suggested nor any do we perceive, which bring this controversy within that class of cases where resort to school authorities for administrative relief is required before application may be made to the courts. Warren v. Sanger Independent School District, 116 Texas 183, 288 S. W. 159; Mosely v. City of Dallas (Tex. Com. App.), 17 S. W. (2d) 36; Palmer Publishing Co. v. Smith, 130 Texas 346, 109 S. W. (2d) 158; and see generally, 37 Tex. Jur., p. 918 et seq. We conclude that this suit in no sense intruded upon or interferred with the administration of the affairs of the Department of Education but to the contrary is calculated to aid in its orderly functioning.

■ As to the defendant's contention that there is a want of necessary parties in that Cisco Independent School District is not sued, the stipulated facts do not show what arrangement the defendant had with the Cisco district when she began teaching there. We would be required to assume and speculate that the Cisco district had rights which would be deleteriously affected by the issuance of the injunction as prayed. That district was, of course, not a party to the contract, the negative covenant of

which the plaintiff seeks to enforce. The want of proper, necessary or indispensable parties was not raised in the trial court but was suggested originally in the Court of Civil Appeals. We conclude there is no circumstance in the proof which indicates any such want of necessary parties as would deprive the trial court of power to act. This contention is accordingly overruled.

The judgments of the Court of Civil Appeals and district court are reversed, and this cause is remanded to the district court with instructions that the injunction issued as prayed.

Opinion delivered June 13, 1945.

Rehearing overruled July 18, 1945.