McLEAN INDEPENDENT SCHOOL DISTRICT et al., Appellants,

v.

Clyde H. ANDREWS et al., Appellees.

No. 6986.

Court of Civil Appeals of Texas.

Amarillo.

March 14, 1960.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellants.

Douglass, Thompson & Douglass, Pampa, for appellees.

CHAPMAN, Justice.

This is an appeal by The McLean Independent School District from a judgment permanently enjoining them from expelling or suspending Marsha Andrews, a senior student in the high school, for past or future violations of a regulation promulgated by the Board of Trustees of said school, reading as follows:

"Motion by McCarty seconded by Suderman that children driving automobiles to school shall park same in parking lot when they arrive at school and not move same until 3:45 P.M. unless by special permission; motion carried unanimously."

Suit was brought by Clyde H. Andrews, individually and as next friend in behalf of his daughter, Marsha Andrews. The trial court found in its judgment that Marsha Andrews violated the quoted rule but that such regulation was void because such Board did not have the power or authority to promulgate such regulation.

Appeal is predicated upon two points; first, that the trial court erred in holding

the trustees were without authority to promulgate the regulation in question and in holding the same void; and secondly, the error of the court in overruling appellant's plea to the jurisdiction because the appellees did not exhaust their rights of appeal through administrative procedures before resorting to the courts for relief.

If appellants are correct on their jurisdictional question it would obviate further writing, so we shall dispose of their second point first. If we read their brief correctly they admit in the very beginning thereof that the trial court had only questions of law before it. After giving a background of the case they say by brief:

"Consequently, the only question involved in this suit is whether or not The Board of Trustees of The McLean Independent School District had the authority to pass the regulation in question."

We have read the record carefully and we have been unable to find any controverted fact issue in the case. Our Fifth Circuit Court in Bruce v. Stilwell, 206 F.2d 554, 557, has said:

"The rule is well-established in Texas that in all matters pertaining to the administration of school laws involving pure questions of law as contradistinguished from questions of fact immediate resort to the courts is proper. Mission Independent School District v. Diserens, 144 Tex. 107, 188 S.W.2d 568, 161 A.L.R. 877; Wilson v. Abilene Independent School District, Tex.Civ.App., 190 S.W.2d 406; State ex rel. Nevills v. Sanderson, Tex.Civ. App., 88 S.W.2d 1069."

In the first case cited by Justice Borah in the quote just made (Mission Independent School District v. Diserens, supra) the Supreme Court of Texas put at rest any question that may have existed as to whether it is necessary to go through administrative procedures before resorting to the courts where there are no controverted fact issues involved in matters pertaining to the administration of school laws. Justice Simpson, writing for the court in the Mission Independent School District case said:

"There was left for decision only a pure question of law and obviously, immediate resort to the courts was proper in such a situation. No circumstances have been suggested, nor any do we perceive, which bring this controversy within that class of cases where resort to school authorities for administrative relief is required before application may be made to the courts. Warren v. Sanger Independent School District, 116 Tex. 183, 288 S.W. 159; Moseley v. City of Dallas, Tex.Com. App., 17 S.W.2d 36; Palmer Publishing Co. v. Smith, 130 Tex. 346, 109 S. W.2d 158; and see generally, 37 Tex. Jur., p. 918 et seq. We conclude that this suit in no sense intruded upon or interfered with the administration of the affairs of the Department of Education but to the contrary is calculated to aid in its orderly functioning." [144 Tex. 107, 188 S.W.2d 570.]

■ Accordingly, we hold the trial court was correct in overruling appellant's plea to the jurisdiction. However, we cannot agree with the court that the board of trustees was without authority to promulgate the rule in question.

Article 2780, Vernon's Ann.Tex.Civ.St. having to do with the authority of Independent School District Trustees provides in part, as follows:

"Said trustees shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control; and they shall have the exclusive power to manage and govern said schools, * * *."

■ The courts of Texas have consistently upheld the actions of school authorities in promulgating rules to insure proper conduct and decorum of the students de-

signed for the good of the schools as a whole where such rules have not shown a clear abuse of power and discretion or a violation of law. So let us look at the facts.

The uncontroverted testimony given in this case by the President of the McLean Board of Trustees shows that before the rule in question was passed 50 to 60 automobiles driven to school by the children would be driven away at the noon hour. The record shows the high school, its grounds and parking areas, and the grade school and playgrounds were all located in the same immediate vicinity, the grade school and playground thereof being just north of the high school and its grounds; that small children would be there at the time the cars were leaving; that before passing the regulation "it got to be quite a traffic problem, a hazard and our sole thought in passing this rule was for the protection of 350 or 60 children that we have in school. We didn't pick out any one person, we weren't trying to make a hardship case on anybody. Our only thought was for the benefit of our children in the McLean schools. That is the reason we passed the rule. Anybody I think that could be there at the time these 50 or 60 cars were trying to leave that parking lot and go to lunch could see the problem we had."

A former trustee of the school who lived four blocks west thereof testified his little girl, who was in the third grade at the time and who rode her bicycle to and from school, was forced off the street into the gutter and injured by school children driving cars three abreast down the street between his house and the school, and within less than a block of the school grounds. He testified they drove the cars so fast away from school he advised his wife not to drive during the noon hour and they just didn't do it if it could be avoided. He further testified he had seen as many as three cars of school boys and girls parked on a country road half a mile west of town at the noon hour and had seen them on numerous occasions out there before the rule in question was passed. He testified he had not seen them there any since the rule was passed and that it had been considerably quieter after the order was invoked.

The high school principal testified he talked to Marsha on several occasions and warned her that she would have to be suspended if she did not comply with the rule in question. The testimony shows the following conversation between them: "* * * there is no reason in the world why you shouldn't drive it in the parking lot." She said, "I don't think my daddy wants me to do that."

The Superintendent of Schools testified:

"The traffic of the students leaving the school after having a joy ride around the school, up the streets and throughout the city of McLean, and also riding on the highways; that has been their big problem, and we are faced with it every year. It wasn't something we just thought up overnight. It was a problem that has been discussed every year, to my knowledge, since I have been in McLean."

\* \* \* \* \* \*

"We have had cars run together, and the time when I was high school principal we had a little boy run over in front of the elementary school."

He further testified in effect that the problem had become more acute each year by reason of the economy of the area, making it possible for more students to have cars to drive to school and that since the rule was invoked conditions had been a hundred per cent better.

The record shows that after the rule was invoked only about 35 cars were driven to school by the children and that they were all parked in the designated areas and left there for the day except the automobile driven by Marsha Andrews. She parked her car at Claude Hunt's house, a block north of the high school, went home to lunch in it each day, and then came back and parked it in the same place until school

turned out for the day. For all practical purposes we may assume Marsha Andrews "drove her automobile to school" within the purview of the rule, and appellees apparently so assume. For example, appellees' counsel asked Marsha's father:

"Q. Now, I want you to tell the court why you permitted Marsha to continue to drive her car to school? A. In order for her to come home to lunch and get back to school."

It has been textually stated:

"In a limited sense the superintendent, principal and board of trustees of a public free school stand in loco parentis to pupils attending the school, and they may officially exercise such powers of control, restraint and correction over pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of the educational system." 37B Texas Jurisprudence, Section 231, p. 414 "Schools."

The authority of the school officials has been further elaborated on in 47 American Jurisprudence, Section 173 "Schools", as follows:

"The authority of school officials assuredly extends into the twilight zone between the school and the home. The misconduct of pupils on the way to school, or on going home from school is properly within the scope of the power of school officers. Hence, a school board may properly make and enforce a rule that scholars shall go directly to their homes after school hours, the liberty of neither the children nor their parents being at all unlawfully restrained by such a rule and its reasonable enforcement."

Our Commission of Appeals has held that the school authorities may prohibit a child from taking lunch during the noon recess except from the school cafeteria or that which was brought from her home, saying, "It was indisputably within the power of the board to enact a rule governing the subject-matter which this rule covers, as it was designed to protect the health of the pupils during the hours they are committed to the care of the school authorities." Bishop v. Houston Independent School District, 119 Tex. 403, 29 S.W. 2d 312, 314 (opinion adopted).

One of the latest pronouncements by our Texas courts on this subject was made by the Eastland Court of Civil Appeals upholding the trial court's ruling that the Abilene Independent School District Board may deny to pupils belonging to secret fraternities and sororities, contrary to the rules of the school, the right of participating in athletic, military, literary, and similar school organizations, although the meetings of the social groups were held outside the school house, after school hours, and with parental consent, where it was shown that such societies had a tendency to destroy good order, discipline, and scholarship. Wilson v. Abilene Independent School District, Tex.Civ.App., 190 S.W.2d 406, 410 (writ refused WM). That court, among other pronouncements, said:

" 'The superintendent, principal and board of trustees of a public free school, to a limited extent at least, stand, as to pupils attending the school, in loco parentis, and they may exercise such powers of control, restraint and correction over pupils as may be reasonably necessary to enable the teachers to perform their duties and to effect the general purposes of education. The courts will not interfere in such matters unless a clear abuse of power and discretion is made to appear.' 37 Tex.Jur. 1059, sec. 173."

"But, necessarily, school boards are given a wide discretion in such matters. They may make all such rules and regulations as in their judgment are necessary to maintain an 'efficient' system of schools, subject to the limitation that there be no abuse of discretion, and that such regulations be not arbitrary,

unreasonable or in violation of law. An excellent statement of the rule is found in Moseley v. City of Dallas, Tex.Com.App., 17 S.W.2d 36, 41, per Judge Critz, as follows: 'Since the board of education of the city of Dallas has the power and authority, under the Constitution and laws of this state, and the charter of said city, to exercise sound judgment and discretion in performing and carrying out the powers and duties required of them by law, the courts will not interfere with them in the exercise of such powers, unless there is a clear abuse of their discretion, or a violation of law, for to do so where there is no abuse of discretion or violation of law would be to substitute the discretion of the courts for that of the board."

The latest authority we know of on the subject is Kissick v. Garland Independent School District, Tex.Civ.App., 330 S.W.2d 708. The Dallas Court of Civil Appeals upheld a rule of the Garland Independent School District which barred married students from participating in athletics or other exhibitions and that they not be permitted to hold class offices or other positions of honor. The Supreme Court has refused a writ NRE in the case.

■ When the rules above announced are applied to the facts of our case we are forced to the conclusion that the learned trial judge was in error in holding that the Board of Trustees of the McLean Independent School District exceeded its authority in promulgating the rule in question. The regulation was not for the purpose of exercising authority over the use of public streets and highways at all (as suggested by appellees' reply point) but for the purpose of controlling the conduct of the students to the end that student pedestrians on the streets adjacent to the schools might be safe from student operated automobiles and that better order, decorum and discipline might prevail at the noon recess. We do not believe they abused their discretion in so doing.

Since all parties assumed Marsha Andrews "drove her automobile to school" within the purview of the regulation in question we may so assume, but we can anticipate further complications in the regulation as worded. For example, students might park their automobiles two or four or more blocks away from school, or in town, walk to them and drive them during the noon recess. Technically they might not be "driving automobiles to school" but would still be guilty of the principal acts the school authorities testified the regulation was passed to prohibit, viz., driving their automobiles at the noon recess. We would respectfully suggest that the purpose sought to be accomplished might be more specifically stated by the following rule, or one of similar language: "School children shall not be permitted to drive automobiles during the lunch period nor anytime after they arrive at school each day until they leave at —P.M. (The time school is dismissed for the day), unless by special permission of the school authorities."

Appellant, through its counsel's oral argument has assured this court that, in the event the rule in question is held to be within their power to promulgate, Marsha Andrews will be permitted to continue in school and enjoy all rights accorded other students if she abides by the rule in the future. The record shows she is an "A" student, a well-behaved young lady, and that in violating the rule under consideration she was following her father's instructions. Such promise may not be interpreted as affecting the decision of this court on the questions of law involved but we believe they do show a proper attitude on the part of the school authorities.

The judgment of the trial court is reversed and rendered that the appellant did not exceed its authority in promulgating the rule in question and suspending Marsha Andrews for its violation after repeated warnings.