552 S.W.2d 922 (1977)
Alicia DE LEON, Adriana Castillo, and Olga Garza, Appellants/Cross-Appellees,
v.
HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, Appellee/Cross-Appellant.
No. 1177.
Court of Civil Appeals of Texas, Corpus Christi.
June 9, 1977.
Rehearing Denied June 30, 1977.
*923 James A. Herrmann, Texas Rural Legal Aid, Inc., Harlingen, for appellants/cross-appellees.
Orrin W. Johnson, Johnson & Davis, Harlingen, for appellee/cross-appellant.

OPINION
BISSETT, Justice.
This is a school admissions case. The minors, Olga Garza, Adriana Castillo, and Alicia de Leon, by and through their next friends, filed suit in the 197th District Court of Cameron County, Texas, against the Harlingen Independent School District, hereinafter referred to as the "District," seeking to permanently enjoin the District from refusing to enroll them as tuition-free students.
The District answered with a plea to the jurisdiction and a general denial. It was asserted in the plea to the jurisdiction that the trial court did not have any jurisdiction to hear and determine the issues presented by plaintiffs' petition because plaintiffs failed to exhaust their administrative remedies before filing suit. Temporary restraining orders were issued by the trial court which restrained the District from refusing to admit the plaintiffs as tuition free students. The trial court later dissolved the temporary restraining orders previously issued in favor of Alicia de Leon and Adriana Castillo, subject, however, to a stay of time pending appeal, and denied their applications for temporary injunction. The trial court also overruled the District's plea to the jurisdiction, and further converted the temporary restraining order theretofore granted Olga against the District into a temporary injunction, pending final hearing of the cause. Alicia de Leon, Adriana Castillo and the District have perfected appeals to this Court from those portions of the judgment which were adverse to them.
Two questions are presented by this appeal. The first is whether the interpretation and application of Tex.Educ.Code Ann. § 21.031 (Supp.1976), to the plaintiffs by the District is constitutionally permissible. The *924 second is whether the plaintiffs were required to first exhaust their administrative appeals before filing suit against the District to compel the District to enroll them as students in its school system.
It was the policy of the District to admit tuition-free only those students who: 1) resided with their parents within the District; or 2) resided with a legally-appointed guardian within the District; or 3) resided with a person within the District who had lawful control over the prospective student pursuant to orders of the juvenile court or a child welfare agency. In determining the question of whether the applicant was entitled to tuition-free education, initially, the school admissions officer decided whether the child was a bona fide resident of the District, or whether the residence in the District was "ostensibly purely for the purpose of going to school." Each individual case was decided strictly on the particular facts pertaining to the "residence" of the applicant. It was the further policy of the District for anyone who was dissatisfied with the decision of its admissions officer to provide for an appeal to the Superintendent of Schools and then to the Board of Trustees of the District.
It is conclusively established by the record that at the time applications were made, the three children lived in the District, but that their parents resided elsewhere. Olga's mother resided in Houston, and her father was a patient in a state hospital which was situated outside the boundaries of the District; she resided with her grandfather, who was a bona fide resident of the District. Alicia's parents resided in Matamoros, Mexico; she lived with her aunt, who was a bona fide resident of the District. Adriana's parents resided in Reynosa, Mexico; she lived with her uncle, who was a bona fide resident of the District. None of the children had legally-appointed guardians who resided in the District. There is no evidence that the relative with whom each child lived had lawful control of the particular child at the time in question.
Tex.Educ.Code Ann. § 21.031 (Supp.1976) reads:
"(a) All children who are citizens of the United States or legally admitted aliens and who are over the age of five years and under the age of 21 years on the first day of September of any scholastic year shall be entitled to the benefits of the Available School Fund for that year.
(b) Every child in this state who is a citizen of the United States or a legally admitted alien and who is over the age of five years and not over the age of 21 years on the first day of September of the year in which admission is sought shall be permitted to attend the public free schools of the district in which he resides or in which his parent, guardian, or the person having lawful control of him resides at the time he applies for admission.
(c) The board of trustees of any public free school district of this state shall admit into the public free schools of the district free of tuition all persons who are either citizens of the United States or legally admitted aliens and who are over five and not over 21 years of age at the beginning of the scholastic year if such person or his parent, guardian or person having lawful control resides within the school district."
Under existing law in this State, except under extraordinary circumstances, the residence of a minor child is that of his parents. While we recognize that there are some situations whereby a minor child may acquire a residence separate and apart from that of his parents which will entitle him to a tuition-free education, we do not think that a residence for free education is established by the mere presence of the child in another district for the sole purpose of attending school. There must be other cogent reasons. Such, in effect, was one of the holdings of this Court in Brownsville Independent School District v. Gamboa, 498 S.W.2d 448 (Tex.Civ.App.Corpus Christi 1973, writ ref'd n. r. e.).
The Attorney General of Texas has taken the position that the sending of a child from one school district to another for the sole *925 purpose of participating in the advantages offered by that school district is not sufficient for the furnishing of tuition-free education. Tex.Atty.Gen.Op.Nos. 0-586 (1939), H-63 (1973). It was clearly set out in those opinions that the residence of a child for the purpose of determining his eligibility for free public education under the statute (Sec. 21.031 of the Code) is normally that of his parents, and whether residence elsewhere will qualify the minor to tuition-free education will depend upon whether the residence is bona fide or is merely for the sole purpose of attending a different school.
The state has a legitimate interest in protecting and preserving the quality of education within its school system. See generally Dunn v. Blumstein, 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1962). This includes the setting of reasonable residency or status requirements to insure that those who come within the bounds of that district solely for educational purposes cannot take advantage of the lesser tuition rates. Vlandis v. Kline, 412 U.S. 441, 452-3, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). The variability of student population is a serious impediment to the effective planning of virtually all phases of the educational process. There is no justification for a requirement that a school system educate in tuition-free manner those children whose only indicia of residence is mere presence within the district, accompanied by the student's desire (or that of his parents) to attend school therein. It is reasonable to draw the line of residency, at least for school admission purposes, between those who come within a school district because they had to move into the district for some valid reason other than for educational purposes, and those who have come there for the sole purpose of getting tuition-free education within the district. There is no reason to add to the burdens of a school district by freely admitting to its schools anyone who has previously resided outside the district simply because they want to attend the schools in the district.
The evidence reveals that the District does admit all students to its schools who are bona fide residents of the District, and that its admissions policies and practices are applied uniformly and without discrimination. The evidence further shows that the District has attempted to follow the mandate of Section 21.031 of the Texas Education Code, as well as the guidelines set out in the opinions of the Attorney General.
Alicia and Adriana each assert that the word "reside," as used in Section 21.031 of the Texas Education Code, means merely that the child must be living in the District on the day application for enrollment is made. The word "reside" is not defined in the Code, and, therefore, its meaning must be determined by considering the object and purpose of the statute in which the word is employed. Prince v. Inman, 280 S.W.2d 779, 781-2 (Tex.Civ.App.Beaumont 1955, no writ); Switzerland Gen. Ins. Co. v. Gulf Ins. Co., 213 S.W.2d 161 (Tex. Civ.App.Dallas 1948, writ ref'd n. r. e.); 77 C.J.S. Residence p. 290 (1952).
The word "reside," as used in the statute, can only be given the meaning ascribed by the Attorney General. Such a meaning is essential if the quality of education within a particular school district is to be preserved. Any different meaning would certainly cause chaotic conditions in many school districts of this State, particularly those along the Rio Grande River. The mere fact that a child lives in a school district, without more, will not satisfy the residence requirement of the statute. The contentions of Alicia and Adriana, if sustained, would render the statute ineffective as a means of imposing reasonable and workable residency requirements upon those children who are physically present in the District, but who do not reside with parent, guardian or other person who has lawful control of them at the time they apply for admission. This, we refuse to do. The trial court did not err, as contended by Alicia and Adriana in their second point of error, in ruling that the admission policies of the District do not contravene either the Fourteenth Amendment of the United States Constitution or Tex.Const. Art. I, § 3. Their second point is overruled.
*926 We have carefully considered the first point of error asserted by Alicia and Adriana, wherein it is stated that the trial court's dismissal of their application for a temporary injunction constituted error "as a matter of law" because such dismissal "was a misapplication of law to undisputed facts." The point has no merit, and is overruled.
We now consider the District's fifth, sixth and seventh points of error that it was error to deny its plea to the jurisdiction. In that connection, it is necessary that we discuss the evidence concerning the reasons why the children attempted to enroll as tuition-free students in the District.
Olga, at the time in question, was 13 years of age, and was a United States citizen. She had moved from her mother's home in Houston and was living with her grandfather, Miguel Garcia, within the District. There is evidence that in some of the preceding years, Olga attended schools other than those in the District. There is also some evidence that she had "always gone to Harlingen schools," which were in the District. There is evidence that Olga had theretofore resided with her grandfather at various intervals for long periods of time. The admissions officer for the District testified that upon application by Olga to attend the District's schools, he had a conference with Miguel Garcia, who told him that the reason for Olga's coming to live with him in the summer of 1975 "was for the purpose of going to school."
Alicia was 6 years old when she sought to enroll in a school in the District. She is a United States citizen, although her parents reside in Matamoros, Mexico. In August, 1975, approximately two weeks prior to the beginning of the next succeeding school year, she moved from the home of her parents in Matamoros to the home of her aunt, Mrs. Luisa Banda, a Mexican citizen, who, at all times material to this appeal, was a resident alien who was legally residing within the District. Mrs. Banda testified that she cared for Alicia, and furnished her clothes and other necessaries; that Alicia's parents wanted the child to live with her; that she was better able to take care of the child than were Alicia's parents; that Alicia had come up to Harlingen several weeks before the effort was made to enroll her in one of the schools in the District; and that it was the child's intention and the intention of her parents that she remain with her until Alicia's parents could immigrate to the United States. The school admissions officer testified that Mrs. Banda informed him that the reason for Alicia's moving to Harlingen was because her parents wanted her "to go to school to get an education."
Adriana, who was 6 years old in August, 1975, is a United States citizen whose parents reside in Reynosa, Mexico. She had always resided with her parents in Reynosa until August, 1975, when she, with the consent of her parents, came to Harlingen, and began living with her uncle, Jose Lopez, who resided in the District. Jose Lopez did not testify at the hearing on the petition of injunctive relief. The school secretary, who registered the child, testified that she had been informed that Adriana's mother resided in the District when the child was registered. Her teacher testified that on the first day of school her uncle (Jose Lopez) told her that the child was living with him because "he wanted the child to go to school." Adriana told her teacher that she spent each weekend with her parents in Reynosa. The school admissions officer testified that his investigation revealed that Adriana had been in Harlingen for approximately a week at some point during the summer of 1975, but later returned to Reynosa, and did not come back to Harlingen until just prior to the opening of the school, and that she thereafter spent her weekends in Reynosa.
Apparently, all three children were registered by the school authorities under the belief that they were bona fide residents of the District at the time applications were made for enrollment. Later, the District determined that they did not meet the residency requirements for tuition-free education. The children and the relatives with whom they lived were then informed that the District would not furnish tuition-free *927 education. Suit was filed shortly thereafter.
Concerning Olga, the trial court found that one reason for her "taking up residence with her grandfather" was to attend a school in the District, but that there were other reasons, such as her family felt that her grandfather was better able to care for her. With respect to Alicia and Adriana, the trial court found that each moved into the District for the sole purpose of "obtaining an education within the Harlingen Public School System."
With reference to all three children, the trial court found:
"... There was no controverted fact issue before the School District or governing its actions and its refusal to admit the child was solely upon the School District policy based upon its construction of the statutes."
With respect to the District's points of error now under consideration the trial court concluded that none of the children was required to exhaust any administrative remedies available to them in that their admission as tuition-free students to the schools in the District was denied by the District "upon a policy of such District based on its construction of the law and not of fact."
The District, in summary, contends that the trial court erred in denying its plea to the jurisdiction because the factual findings were premature in that the court did not have jurisdiction to make any fact findings or to render any judgment on the claims asserted by the children until the children had first exhausted their administrative remedies. It is undisputed that none of the children (plaintiffs) appealed the ruling by the school admissions officer to any administrative official, board or agency.
Cases which have involved disputes arising under the school laws of Texas, or which involved a complaint as a result of actions or decisions by school district authorities clearly lay down the rule that in all such cases involving factual determinations, as distinguished from cases involving pure questions of law, the party complaining of the action by school authorities must exhaust all administrative appeals before resort may be had to the courts for relief. Mission Independent School Dist. v. Diserens, 144 Tex. 107, 188 S.W.2d 568 (1945); Palmer Pub. Co. v. Smith, 130 Tex. 346, 109 S.W.2d 158 (Tex.Com.App.1937, opinion adopted); Ector County Independent School District v. Hopkins, 518 S.W.2d 576 (Tex.Civ.App.El Paso 1974, no writ); Garcia v. Pharr, San Juan, Alamo Independent School District, 513 S.W.2d 636 (Tex.Civ. App.Corpus Christi 1974, writ ref'd n. r. e.); McIntyre v. Hoblinski, 333 S.W.2d 697 (Tex.Civ.App.Waco 1960, writ ref'd.).
There is a factual uncertainty in the case of Olga as to the real reason (or reasons) for her move from Houston into the District. Although the trial court found that there existed other reasons for Olga's relocation in Harlingen in addition to that for tuition-free purposes, it is undisputed that at the time Olga and her grandfather presented her request for enrollment to the admissions officer of the District, they assigned no reason other than the fact that she wanted to go to school in Harlingen. The admissions officer was not advised of any other reason which required her to leave her mother's home.
Considering all of the evidence presented by the record, there is evidence that the principal reason for Olga's request for admission to a school in the District was to go to school in the District; however there is some evidence that her presence in the District was caused by other reasons as well. A fact issue concerning the real reason for Olga's residing in the District is presented.
The factors which appear in the record that affect the issue of residency of Alicia and Adriana are: the period of time each child has been living within the District; the future plans of the parents as to where they and their child shall live; the justification from a standpoint of the health and welfare of each child, excluding the educational aspects of the problem; the presence of family difficulties as a motivating factor in the child's moving into the District; residence *928 on weekends; and, finally, the stated purpose of residency in the District by the relatives of each child. A fact issue relating to the primary reason for both Alicia and Adriana residing in the District is also presented.
Certain factual issues had to be resolved before there could be a determination of whether each of the plaintiffs was a bona fide resident of the District at the time pertinent to this appeal. Those issues do not constitute purely questions of law, but constitute factual determinations. They should have been resolved by the appropriate administrative agencies through appeals provided by law before relief was sought in the courts. Neither Olga, Alicia nor Adriana exhausted their administrative remedies before they filed suit. Consequently, judicial review was premature. The District's plea to the jurisdiction should have been sustained and the cause should have been dismissed. The trial court was without jurisdiction in the case, save and except to render a judgment of dismissal of plaintiffs' asserted cause of action for want of jurisdiction. Therefore, it becomes the duty of this Court to set aside the judgment of the trial court and to dismiss plaintiffs' case. C. E. Fulton v. Finch, 162 Tex. 351, 346 S.W.2d 823 (1961); Jones v. Bass, 49 S.W.2d 723 (Tex.Com.App.1932, opinion approved); Atlantic Richfield Company v. Liberty-Danville Fresh Water Supply District No. One of Gregg County, 506 S.W.2d 931 (Tex.Civ.App.Tyler 1974, writ ref'd n. r. e.); Travelers Express Company, Inc. v. Winters, 488 S.W.2d 890 (Tex.Civ.App.El Paso 1972, writ ref'd n. r. e.); Matlock v. Williams, 281 S.W.2d 229 (Tex.Civ.App. Beaumont 1955, no writ); Dula v. Bush, 136 S.W.2d 898 (Tex.Civ.App.Dallas 1939, no writ).
The District's fifth, sixth and seventh points are sustained. The disposition which we make of this appeal renders it unnecessary for us to pass on the District's remaining points or on its cross points.
The judgment of the trial court is REVERSED and judgment is here rendered that the cause be DISMISSED.