**Yusuf Elias FARRAN, Appellant,**

v.

**CANUTILLO INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 08–10–00289–CV.

Court of Appeals of Texas, El Paso.

June 13, 2012.

Perry Pinon, El Paso, TX, for Appellant.

Steven L. Hughes, Mounce, Green, Myers, Safi, Paxson & Galatzan, El Paso, TX, for Appellee.

Before McCLURE, C.J., RIVERA, J., and CHEW, C.J. (Senior) not participating.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice.

Yusuf Elias Farran appeals from an order granted a plea to the jurisdiction filed by the Canutillo Independent School District and dismissing Farran's claims with prejudice. We affirm in part and reverse and remand in part.

## FACTUAL SUMMARY

CISD hired Farran in 2004 for the position of Construction Administrator and he was later promoted to Executive Director of Facilities and Transportation.[1] Under his contract, Farran could only be terminated for good cause. While supervising the Maintenance Department, Farran reported to the Superintendent, Assistant Superintendent, and the Board incidents of alleged employee theft and falsification of time cards. Several employees were discharged or resigned as a result of Farran's reports.

In May, June, July, August, September, and October of 2008, Farran notified the Superintendent, Assistant Superintendent, the CISD internal auditor, and the Board that Henry's Cesspool Services was not removing grease-trap waste as required by its contract and it was being paid an amount which exceeded the contracted amount. Farran also reported that CISD's disposal of grease trap waste violated City of El Paso Ordinances and the City's Public Services Board's Rules and Regulations No. 15. Farran was concerned that the grease would damage the wastewater treatment plant under his management. Some of the school board trustees began reacting negatively to the reported violations and questioned Farran's motives and one of the trustees allegedly told Farran that if he valued his job, he would stop making his accusations about the grease trap issues. In January and February 2009, Farran reported to the Superintendent that CISD was continuing to violate Regulation No. 15 and its grease trap permits, and it was continuing to pay Henry's Cesspool for services not actually performed.

In late February or early March 2009, Superintendent Padilla questioned Farran about personal telephone calls allegedly made during business hours on school equipment. Farran denied doing anything improper. Padilla subsequently notified Farran he had been suspended with pay during an investigation into allegations of misconduct. The letter prohibited Farran from going onto CISD property, and talking with any CISD employees or Board

---

1. The factual summary is taken from Farran's pleadings and the evidence submitted in connection with the plea to the jurisdiction.

members without the Superintendent's permission. The Board of Trustees recommended on May 28, 2009 that Farran be terminated. The following day, CISD notified him of his proposed termination and the grounds for the decision. The letter advised Farran that he could request a due process hearing before the appointed hearing office, Patricia Palafox, and the Board would make a final decision based on the written recommendation from the hearing officer. If he failed to request a hearing, the Board could proceed to make a final decision. Farran requested a hearing and it was held on August 27 and 28, 2009. The hearing officer determined that good cause existed to sustain CISD's termination of Farran's employment contract. On September 21, the Board accepted the hearing officer's recommendation and terminated Farran's employment. CISD notified Farran of the Board's decision the following day.

Farran filed suit alleging that CISD terminated him in violation of the Texas Whistleblower Act, breached his employment contract by firing him without good cause, and discharged him in violation of public policy after he refused to perform an illegal act. CISD filed a plea to the jurisdiction with respect to all three claims. The trial court granted the plea to the jurisdiction and dismissed Farran's claims with prejudice.

## PLEA TO THE JURISDICTION

Farran raises five issues on appeal challenging the trial court's order granting the plea to the jurisdiction. Rather than addressing the issues in order, we will consider them as they pertain to his causes of action beginning with his claim made pursuant to the Texas Whistleblower Act.

### Standard of Review

■■■ A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004); *Bland Independent School District v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). The plaintiff bears the burden to allege facts affirmatively proving that the trial court has subject matter jurisdiction. *Texas Department of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction and whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction are questions of law which we review *de novo. Texas Department of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Texas Natural Resource Conservation Commission v. IT–Davy,* 74 S.W.3d 849, 855 (Tex. 2002).

■■■ When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *Miranda,* 133 S.W.3d at 226. When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez,* 325 S.W.3d 622, 625 (Tex.2010); *Bland ISD,* 34 S.W.3d at 555. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Miranda,* 133 S.W.3d at 227–28; *see City of Elsa,* 325 S.W.3d at 626. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Miranda,* 133 S.W.3d at 228.

## TEXAS WHISTLEBLOWER ACT

Issues Two, Three, and Four are related to Farran's claim that he was terminated

in violation of the Texas Whistleblower Act. CISD asserted in the plea that the trial court lacked jurisdiction because Farran failed to allege a report in good faith to an appropriate law enforcement authority as required for recovery under the Act. Additionally, CISD argued that Farran's report to the FBI made in July 2009 could not have caused his termination since it occurred after he had already been recommended for termination.

■ In general, school districts such as CISD are immune from suit and liability unless the legislature expressly waives sovereign immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex.2009). The Whistleblower Act waives CISD's immunity from suit for Farran's claim if he alleged sufficient facts to establish that he was a public employee and he in good-faith reported a violation of law by CISD or another public employee to an appropriate law enforcement authority. *See* TEX.GOV'T CODE ANN. § 554.002 (West 2004); *City of Elsa*, 325 S.W.3d at 625; *Lueck*, 290 S.W.3d at 882–83. While the Whistleblower Act does not explicitly require an employee to prove a causal link between the report and the subsequent discrimination, the Supreme Court has held that the plaintiff is required to show that after he reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his employer that would not have occurred when it did if the employee had not reported the illegal conduct. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000); *see City of El Paso v. Parsons*, 353 S.W.3d 215, 225 (Tex.App.-El Paso 2011, no pet.).

### Good Faith Reports to Appropriate Law Enforcement Authority

■ In Issue Two, Farran contends that his reports of violations to CISD's superin-

tendent, internal auditor, and school board were reports to appropriate law enforcement authorities because these persons were authorized to enforce and regulate CISD's compliance with the laws alleged to have been violated. In Issue Three, Farran argues that his reports made to the superintendent, internal auditor, and the school board were reports to persons or entities who he in good faith believed were appropriate law enforcement authorities.

■ Under Section 554.002(b), "a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law. TEX.GOV'T CODE ANN. § 554.002(b). It is not enough that a governmental entity has general authority to regulate, enforce, investigate, or prosecute. *Texas Department of Transportation v. Needham*, 82 S.W.3d 314, 320 (Tex.2002). The issue is whether the governmental entity is authorized to regulate under or enforce the law alleged to be violated in the report. TEX. GOV'T CODE ANN. § 554.002(b); *Needham*, 82 S.W.3d at 320. Consequently, the particular law the employee reported to have been violated is critical to the determination. *Needham*, 82 S.W.3d at 320. Further, the law alleged to have been violated must be a state or federal statute, an ordinance of a local governmental entity, or a rule adopted under a statute or ordinance. *See* TEX.GOV'T CODE ANN. § 554.001(1).

■ A determination that a governmental entity is not authorized to regulate under or enforce the particular law at issue in a case does not necessarily end the inquiry because a plaintiff may still obtain Whistleblower Act protection if he in good

faith believed that the governmental entity was an appropriate law enforcement authority. *See Needham,* 82 S.W.3d at 320. In the context of section 554.002(b), "good faith" means:

(1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and

(2) the employee's belief was reasonable in light of the employee's training and experience.

*Needham,* 82 S.W.3d at 321.

### The Reports Alleging Violations of City Ordinances and PSB Rules

Farran's suit alleges that he reported to the superintendent, the internal auditor, and the board of trustees that CISD's disposal of grease trap waste violated City of El Paso Ordinances and the City's Public Services Board's Rules and Regulations No. 15. Farran's pleadings stated that he believed in good faith that these authorities are "appropriate law enforcement authorities" under the Whistleblower Act.

CISD does not have authority to regulate under or enforce city ordinances or regulations. Farran's evidence submitted in response to CISD's plea to the jurisdiction shows that the PSB has the duty to investigate and prosecute non-compliance with these ordinances and regulations. Farran does not allege that he ever made a report to the PSB or that CISD discharged him because he made such a report. Consequently, Farran's pleadings and jurisdictional evidence submitted to the trial court affirmatively show he did not make the reports related to the alleged grease trap violations to an appropriate

law enforcement authority. *See Lueck,* 290 S.W.3d at 885 (the plaintiff's report to his supervisor who did not have the authority to regulate or enforce the laws in question were not made to an appropriate law enforcement authority).

There is no evidence that Farran subjectively believed that the superintendent, the internal auditor, and the board of trustees were authorized to regulate under or enforce the City's ordinances and the PSB's rules. Even assuming Farran had such a belief, he did not produce any evidence that his belief was reasonable in light of his training and experience.

### The Reports Alleging Violations of Criminal Laws

▮ Farran's suit also alleges that he made reports to CISD's superintendent and the board of trustees regarding the theft and attempted theft of CISD's tools, equipment, parts, and construction materials and falsification of time cards. He identifies one of the laws violated as Section 31.03 of the Texas Penal Code.[2] Under Section 31.03 of the Penal Code, a person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. TEX.PENAL CODE ANN. § 31.03 (West Supp.2011). CISD does not have authority to regulate under or enforce Texas theft laws nor does it have authority to investigate or prosecute a violation of criminal law. *See* TEX.GOV'T CODE ANN. § 554.002(b)(1), (2). While CISD has authority to regulate and investigate its employees' conduct in order to carry out its internal disciplinary procedures, the Supreme Court has held that is an insufficient basis to find that a governmental entity is an appropriate law enforcement

---

2. Farran also identifies provisions of the Texas Constitution and Section 45.105 as laws violated by the theft and falsification of time cards. We will address this argument in another section of the opinion.

authority under Section 554.002(b). *See Needham*, 82 S.W.3d at 320. Consequently, Farran did not make the theft reports to an appropriate law enforcement authority. *See Needham*, 82 S.W.3d at 320 (finding TxDOT is not a governmental entity authorized to regulate under, enforce, investigate, or prosecute DWI laws; therefore, plaintiff's report of another employee's alleged commission of DWI was not made to an appropriate law enforcement authority under Section 554.002(b)).

There is no evidence that Farran subjectively believed that the superintendent and the board of trustees were authorized to regulate under or enforce Section 31.03, nor is there evidence that he believed they could investigate or prosecute the violations of the theft law. Further, Farran did not present any evidence that such a subjective belief would have been reasonable in light of his training and experience.

 Farran also alleged that he made a report to Superintendent Padilla regarding an alleged conspiracy to tamper with governmental records in violation of Section 37.10 of the Texas Penal Code. In his pleadings, Farran stated that he was present in Padilla's office when she received a phone call from Letty Gonzalez, a member of the Board of Trustees. Gonzalez asked Padilla if she would authorize the payment of back pay to her brother-in-law, Rodolfo Gonzalez, related to his employment as interim lead custodian at Canutillo Middle School in 2007 and 2008. Farran told Padilla there was no documentation to support the claim for back pay because the principal of the school had never submitted a request for Rodolfo Gonzalez to be made Interim Lead Custodian. In December 2008, Padilla asked Farran to sign a "Personnel Action Form" to support Gonzalez's claim for back pay, but he refused. Padilla informed Letty Gonzalez that Farran refused to sign the form. In January

2009, CISD paid Rodolfo Gonzalez the amount of his claim for back pay. Farran alleged that his refusal to sign the "Personnel Action Form" and his explanations for his refusal constituted a report to Padilla of an ongoing criminal conspiracy to commit the crime of tampering with a governmental record.

Under Section 37.10(a)(1) of the Texas Penal Code, a person commits an offense if he knowingly makes a false entry in, or false alteration of, a governmental record. Tex.Penal Code Ann. § 37.10(a)(1)(West 2011). A person commits criminal conspiracy if, with intent that a felony be committed he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and he or one or more of them performs an overt act in pursuance of the agreement. Tex.Penal Code Ann. § 15.02(a)(West 2011). CISD does not have authority to regulate under or enforce these penal statutes nor does it have authority to investigate or prosecute a violation of criminal law. *See* Tex.Gov't Code Ann. § 554.002(b)(1), (2). Consequently, Farran did not make the report alleging a criminal conspiracy to an appropriate law enforcement authority. *See Needham*, 82 S.W.3d at 320.

As was the case with the theft reports, there is no evidence that Farran subjectively believed that Superintendent Padilla was authorized to investigate or prosecute a criminal conspiracy offense. Further, Farran produced no evidence that such a subjective belief would have been objectively reasonable in light of his training and experience.

### The Reports Alleging Financial Improprieties

 As discussed above, Farran made reports of employee theft and time card falsification to the superintendent and

the board of trustees. Farran argues that paying employees for hours not worked is an improper expenditure of school funds in violation of Section 45.105 of the Texas Education Code and Tex.Const. art. III, §§ 50, 51, and 52, and Tex.Const. art. XI, § 3. Farran further alleged that he was discharged because he reported to the superintendent, internal auditor, and the board of trustees that Henry's Cesspool Services was not removing grease-trap waste as required by its contract[3] and it was being paid an amount which exceeded the contracted amount. Farran contends that by paying Henry's Cesspool Services for services not performed, CISD violated Section 45.105 and the Texas Constitution's restrictions on the expenditure of public funds for private purposes. Farran argues on appeal that he had a good faith belief that he made the reports to appropriate law enforcement authorities.

We begin by observing that Farran's brief does not contain any discussion regarding Article XI, Section 3 of the Texas Constitution nor does he cite any authority which might explain his reliance on this provision.[4] An appellant's brief must contain a clear and concise argument for the contention made, with appropriate citations to authorities and to the record. Tex.R.App.P. 38.1(i). Consequently, we conclude that this portion of his argument is waived. *See City of Midland v. Sullivan*, 33 S.W.3d 1, 10 n. 6 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.)(appellant failed to brief complaint and thus waived appellate review of issue).

A school district's trustees have the exclusive power and duty to govern and oversee the management of the public schools of the district. Tex.Educ. Code Ann. § 11.151(b)(West 2006). This duty is limited, however, because Texas law restricts expenditures of public school funds except for statutorily authorized purposes. Tex.Educ.Code Ann. § 45.105 (West 2006). The Texas Constitution also limits the use of public credit and funds for private purposes. Article III, Section 50 bars the Legislature from extending the credit of the State to private individuals for private purposes. Tex. Const. art. III, § 50; *Cross v. Dallas County Flood Control Dist. No. 1*, 773 S.W.2d 49, 51 (Tex. App.-Dallas 1989, no writ). Article III, sections 51 and 52 of the Texas Constitution prohibit the expenditure of public funds for private gain. Tex.Const. art. III, §§ 51, 52; *Graves v. Morales*, 923 S.W.2d 754, 757 (Tex.App.-Austin 1996, writ denied). The purpose of the constitutional provisions barring transfers to private individuals is to prevent the gratuitous application of public funds to any individual. *Graves*, 923 S.W.2d at 757, *citing Edgewood Independent School District v. Meno*, 893 S.W.2d 450, 473 (Tex.1995).

In his first affidavit submitted as part of his response to the plea to the jurisdiction, Farran stated that he believed the superintendent had authority to investigate his reports and "to enforce the laws that were being violated by taking action to ensure the District did not pay for services that were not actually provided, and to ensure compliance with laws." Farran reported violations to the internal auditor, Martha

---

3. Farran's reports to CISD and his July 2009 report to the FBI alleging that Henry's Cesspool Services was not performing its obligations under its contract with CISD is not a report about a violation of law committed by a public employee or CISD. *See* Tex. Gov't Code Ann. § 554.002. Consequently, this por-

tion of his reports does not fall within the reach of the Texas Whistleblower Act.

4. Appellant cites Tex.Att'y Gen.Op. MW–89 (1979) in support of his argument. MW–89 discusses Article III, Sections 50, 51 and 52, but does not address Article XI, Section 3.

Carrasco, in order for her to investigate the violations and report them to the school board. He also made reports directly to the school board because he believed the board could take action to stop paying Henry's Cesspool Services when the company was not performing its obligations.

Farran filed a second affidavit in which he averred that "[c]omplaints of violations of law could be made to Canutillo ISD by making the complaints directly to supervisors or to the Canutillo ISD hotline." Additionally, Farran stated that reports of violations of law were channeled to the internal auditor who would investigate and report her findings to the superintendent and the board of trustees. The internal auditor would make recommendations to the board of trustees and the board would vote on whether or not to approve the recommended action. After Farran reported to the superintendent and board of trustees that CISD was paying Henry's Cesspool Services for services that had not been provided, the internal auditor told him the board of trustees had asked her to investigate. Farran then reported the violations to the internal auditor as part of her investigation. The foregoing evidence demonstrates that Farran subjectively believed that the superintendent, internal auditor, and school board trustees were appropriate law enforcement authorities for purposes of reporting improper expenditures of school funds.

With respect to the objective part of the test, Farran offered evidence that the internal auditor's responsibilities include assisting in the investigation of any suspected fraudulent activities within the school district. The superintendent's duties include maintaining a system of internal controls to deter and monitor for fraud or financial impropriety in the school district. CISD has written procedures for employee complaints or grievances. The complaints proceed through three levels beginning with a written complaint to be addressed by the lowest level administrator with authority to remedy the problem (Level One). If the superintendent is the only administrator with authority to address the issue, the complaint may begin at Level Two. The complaint proceeds to a Level Two conference with the superintendent if the employee did not get the relief requested in Level One. If the employee is unsuccessful in Level Two, the complaint proceeds to Level Three which is a meeting before the board of trustees. The procedure specifically addresses what it terms as Whistleblower complaints:

> Whistleblower complaints shall be filed within the time specified by law. Such complaints shall first be filed in accordance with LEVEL TWO, below. Time lines for the employee and the District set out in this policy may be shortened to allow the Board to make a final decision within 60 days of the initiation of the complaint.

The procedure also addresses complaints against supervisors and provides that complaints alleging a supervisor's violation of law may be made to the superintendent beginning at Level Two, and a complaint alleging a violation of law by the superintendent may be made directly to the Board beginning at Level Three.

Farran also presented evidence that CISD has a "compliance hotline program" which provides a mechanism for employees and citizens to report an issue or concern related to waste, fraud, abuse, or unethical behavior. Reports are made by telephone or by submitting a written report online. The written description of the program on CISD's website advises employees that:

> The Compliance Hotline Program is not expected to replace our existing internal reporting structure; rather it is a tool

meant to supplement the mechanism we currently have in place. Any employee who has an issue or concern related to waste, fraud, abuse, or unethical behavior must report it through the proper channels as specified in our policies. However, if that is not feasible, the hotline is provided as a communication option.

The online reporting form advised citizens and employees that:

> The ongoing success of Canutillo Independent School District' is dependent upon our employees conducting business with integrity and in full compliance with regulations, legislation, and our own corporate operating policies and procedures. Ethical and compliant business behavior that reflects our corporate values is right for our employees, right for our customers, right for our stakeholders, and right for our business. Canutillo Independent School District depends on you to safeguard our organization's reputation and protect us from financial and legal harm. If you have observed employee misconduct, speak up!

When making a report online, the person making the report is required to choose a primary issue that is being reported. The form lists numerous topics including "Misuse or Misappropriation of Assets."

Given the existence of CISD's internal reporting structure and this hotline, as well as the internal auditor's response to Farran's reports about the payments made to Henry's Cesspool Services, a fact issue exists as to whether Farran had an objectively reasonable belief that the superintendent, internal auditor, and board of trustees were appropriate law enforcement authorities to address his "Whistleblower complaints" about time card falsification and the improper expenditure of funds. *See Moreno v. Texas A & M University–*

*Kingsville,* 339 S.W.3d 902, 910–13 (Tex. App.-Corpus Christi 2011, pet. filed)(state university employee reported to university president that supervisor had violated out-of-state tuition waiver law and was subsequently terminated; court of appeals held that genuine issue of material fact existed as to whether employee had reasonable belief that president was an appropriate law enforcement authority where the university had a policy which required employees to report suspected fraudulent incidents or practices to her supervisor, the university president, or the internal auditor); *University of Texas Southwestern Medical Center at Dallas v. Gentilello,* 317 S.W.3d 865, 870–71 (Tex.App.-Dallas 2010, pet. granted)(doctor employed by UT Southwestern reported to clinical department chair that resident doctors were treating and performing surgical procedures on patients without supervision of an attending physician in alleged violation of Medicare and Medicaid rules and regulations; held that fact issue existed whether doctor had a good faith belief that he reported violations to an appropriate law enforcement authority where evidence showed that clinical department chair set the policies regarding the presence of attending physicians and had the power to internally investigate Medicare and Medicaid violations). Consequently, the trial court erred by granting the plea to the jurisdiction as it related to this aspect of the Whistleblower claim. We overrule Issue Two, but sustain Issue Three.

### Causal Connection

In Issue Four, Farran asserts that there is a causal connection between his report to the FBI and his discharge. In order to show causation, a public employee must show that *after* he reported a violation of law in good faith to an appropriate law enforcement authority he suf-

fered an adverse employment decision by his employer that would not have occurred when it did if the employee had not reported the illegal conduct. *Zimlich,* 29 S.W.3d at 67. In July 2009, Farran reported to the FBI that Henry's Cesspool Services had been billing CISD for services not rendered and CISD had been paying those bills. This report occurred several weeks after the Board notified Farran of his proposed termination and the grounds for the decision. After Farran made the report to the FBI, he had a due process hearing before the appointed hearing office, Patricia Palafox, and Palafox determined that good cause existed to sustain CISD's termination of Farran's employment contract. The Board subsequently accepted Palafox's recommendation and terminated Farran's employment. These factual allegations do not reasonably support a finding that Farran's termination would not have occurred when it did if he had not made the report to the FBI. Issue Four is overruled.

## BREACH OF EMPLOYMENT CONTRACT

In Issue One, Farran argues that he was not required to appeal to the commissioner of education in order to exhaust his remedies. Farran's suit alleged that CISD breached the employment contract by discharging him without good cause. Section 7.057(a)(2)(B) of the Texas Education Code provides that a person may appeal in writing to the commissioner of education if the person is aggrieved by actions or decisions of any school district board of trustees that violate a provision of a written employment contract between the school district and a school district employee if a violation causes or would cause monetary harm to the employee. TEX.EDUC.CODE ANN. § 7.057(a)(2)(B). Generally, Texas requires an aggrieved party to first exhaust all remedies provid-

ed under the statutory administrative scheme if the subject matter involves questions of fact. *Ysleta Independent School District v. Griego,* 170 S.W.3d 792, 795 (Tex.App.-El Paso 2005, pet. denied), *citing Mission Independent School District v. Diserens,* 144 Tex. 107, 188 S.W.2d 568, 570 (1945); *see Barrientos v. Ysleta Independent School District,* 881 S.W.2d 159, 160 (Tex.App.-El Paso 1994, no writ). Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights. It is meant, rather, to provide an orderly procedure by which aggrieved parties may enforce those rights. *Griego,* 170 S.W.3d at 795. An employee who alleges that a school district wrongfully terminated an employment contract must apply to the school authorities for relief before filing suit in the district court. *Id.* Texas law gives the commissioner of education the power to reverse a termination or contract nonrenewal on appeal. *Id.*

The record reflects that a fact issue exists with respect to whether CISD had good cause to terminate Farran. Consequently, Farran was required to exhaust his administrative remedies pursuant to Section 7.057 of the Education Code before filing suit. The trial court did not err by granting the plea to the jurisdiction with respect to the breach of contract claim. Issue One is overruled.

## DISCHARGE IN VIOLATION OF PUBLIC POLICY

In his final issue, Farran asks the Court to create a new common-law "public policy cause of action" for government employees discharged solely for refusing to perform an illegal act. In December 2008, an employee claimed he was owed backpay for work performed while acting as the Interim Lead Custodian in 2007 and 2008. Farran refused to sign a personnel action

form to support the employee's claim for backpay and he believed the backpay was not justified. Farran asserts that he was discharged for refusing to commit the criminal offense of tampering with a governmental record.

The Supreme Court's decision in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex.1985) created a narrow exception to the employment-at-will doctrine by permitting an at-will employee to maintain a cause of action for wrongful discharge if the employee was discharged solely because he refused to perform an illegal act carrying criminal penalties. The Sabine Pilot exception does not apply to Farran because he is not an at-will employee, but he asks that we extend the exception to "just cause" employment relationships. The Dallas Court of Appeals addressed the same issue in *Simmons Airlines v. Lagrotte*, 50 S.W.3d 748 (Tex.App.-Dallas 2001, pet. denied). Lagrotte, a commercial airline pilot, was terminated after he refused to pilot a flight from Dallas to Houston due to severe icing conditions. Lagrotte was protected by a collective bargaining agreement and could not be terminated without just cause. A jury found that Simmons Airlines acted with malice in terminating Lagrotte for the sole reason that he refused to perform an illegal act and the trial court entered judgment in accordance with the jury's verdict. Simmons argued on appeal that the trial court erred by extending the *Sabine Pilot* exception to apply to a "just cause" employment relationship. *Simmons*, 50 S.W.3d at 750. Similar to the argument made by Farran, Lagrotte urged on appeal that public policy demanded that the Sabine Pilot exception apply equally to "just cause" employees. *Id.* at 752. The Dallas Court of Appeals refused to extend *Sabine Pilot* because "[i]t is not for an intermediate appellate court to undertake to enlarge or extend the grounds for wrongful dis-

charge under the employment-at-will doctrine." *Id.* We believe the Dallas Court of Appeals analysis is correct. Accordingly, we decline to extend the Sabine Pilot exception to Farran's "just cause" employment relationship. Even if the cause of action existed, CISD has sovereign immunity unless the Legislature has expressly waived it. *See Lueck*, 290 S.W.3d at 880. Farran has not shown that the Legislature has waived CISD's sovereign immunity. Issue Five is overruled.

Having sustained Issue Three in part, we reverse the order granting CISD's amended plea to the jurisdiction but only with respect to the claim made under the Whistleblower Act regarding time card falsification and payments made to Henry's Cesspool Services. Having overruled Issue Three in part, we affirm the portion of the trial court's order granting the plea to the jurisdiction as it pertained to the remainder of the Whistleblower Act claim. Having overruled Issues One, Two, Four, and Five, we also affirm the portion of the trial court's order granting the plea to the jurisdiction as it pertained to the breach of contract and public policy tort claims. The cause is remanded to the trial court for further proceedings consistent with this opinion.