Opinion issued September 25, 2014.



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00452-CV

————————————

## CAMERON INTERNATIONAL CORPORATION, Appellant

## V.

## JEREMY GUILLORY, Appellee

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2014-05262

## O P I N I O N

This is an interlocutory appeal from the trial court's temporary injunction order, entered in an employment suit involving a covenant not to compete.

Cameron International Corporation, a Delaware corporation headquartered in Houston, sues one of its former managerial employees, Jeremy Guillory.

Cameron sells oilfield service equipment. Guillory founded and grew Cameron's office in Colorado. Guillory and several other employees then left Cameron to found an entity that competed against Cameron. Cameron alleges that Guillory, in particular, breached noncompetition and confidentiality provisions that he agreed to abide by in consideration for a distribution of restricted stock in Cameron.

The trial court granted temporary injunctive relief, enforcing the confidentiality agreement, but it denied enforcement relief on Cameron's noncompete claim. Cameron appeals, contending that the trial court erred in refusing to enjoin Guillory from competing against it for the one-year duration of the covenant not to compete. We reverse.

## Background

Cameron is in the oilfield services business. It supplies flow production equipment, products, and services to oil, gas, and processing industries. It does business in more than 100 countries, and domestically, in most states where significant oil and gas reserves are located. Guillory began his employment with Cameron in Louisiana in 2005. That August, he signed a confidentiality agreement, in which he agreed to refrain from disclosing Cameron's confidential

2

trade secrets, marketing, and sales data. Guillory was a successful Cameron employee. As he worked his way up in the company, his promotions took him to Wyoming and, in March 2011, to Colorado. There, he established Cameron's new office in Fort Collins, giving it a foothold in the development of the Niobrara shale—a potentially rich source of oil and natural gas extractable through hydraulic fracturing. Under Guillory's management, the Fort Collins office grew rapidly; after three years, Cameron employed more than 80 people there.

In recognition of Guillory's exceptional performance, Cameron awarded Guillory shares of its restricted stock. In a January 2013 letter, Cameron informed Guillory that he had been awarded 283 restricted stock units through its Restricted Stock Unit Program. A single-page enclosure, entitled "2013 Cameron RSU Program FAQ," accompanied the letter. Among other questions, it addressed:

> "What happens if I leave Cameron?"
>
> "There are different outcomes to how your RSUs will be treated upon different types of terminations (voluntary, retirement, etc.) Please review your RSU grant agreement carefully to better understand the specific termination provisions."

The FAQ enclosure also explained that, as a first-time RSU award recipient, Guillory would "receive an e-mail from E-Trade by the end of January that contains an authentication code and instructions on how to access your account online."

The e-mail Guillory received instructed him that "[t]he Notice of Grant of Award and RSU Agreement . . . should be accepted online at www.etrade.com as soon as possible." Among the steps included in the instructions were the following:

> To accept your new award, click on <u>Requires Acceptance</u> under the <u>Status</u> column.
>
> a. You are required to open and review each document before you can accept the award. You will not be able to accept the award without opening each document.
>
> b. To accept your award, enter your Login Password and click on the <u>Accept</u> button. A Confirmation of Acceptance message will appear.
>
> c. Copies of the award documents and Confirmation of Acceptance page may then be printed for your file.

The website activity history shows that Guillory opened the RSU agreement and answered a prompt stating that he read and understood the agreement. An archived screenshot of the page containing the <u>Accept</u> button contained:

- a notice above the button entitled "**Message From Your Company**," explaining: "By acceptance of this Award you agree to be bound by the terms and conditions of the [RSU] Agreement."

- A direction to review certain grant documents, and

- Appearing immediately above the <u>Accept</u> button, a statement declaring "**I acknowledge that I have reviewed and understood the following grant document(s),** followed by a list of download links for each document.

4

The RSU agreement included a noncompete provision, which provides:

**<u>Covenant not to Compete, Solicit or Disclose Confidential Information</u>.** The Participant acknowledges that the Participant is in possession of and has access to confidential information, including material relating to the business products or services of the Company or Employer and that he or she will continue to have such possession and access during employment by the Company or Employer. Participant acknowledges that the Company's business, products and services are highly specialized and that it is essential that they be protected, and, accordingly, the Participant agrees that as partial consideration for the Award granted herein that should the participant engage in any "Detrimental Activity" as defined below, at any time during his or her employment or during a period of one year following his or her termination the Company or Employer shall be entitled to: (i) **recover from the Participant the value of any portion of the Award that has been paid**; (ii) seek injunctive relief against the Participant; (iii) recover all damages, court costs, and attorneys' fees incurred by the Company or Employer in enforcing the provisions of this Award, and (iv) set-off any such sums to which the Company or Employer is entitled hereunder against any sum which may be owed the Participant by the Company or Employer.

(Emphasis and underlining in original). The provision defines "Detrimental Activity" as including:

- "engaging directly or indirectly in any business, which is or becomes competitive with [Cameron]";

- "soliciting, interfering, inducing, or attempting to cause any employee of [Cameron] to leave his or her employment"; and

- "directly or indirectly soliciting the trade or business of any customer of [Cameron]."

The RSU agreement also contains a "Governing Law" provision declaring that Delaware law governs questions concerning the validity, construction and effect of the agreement, "without reference to principles of conflicts of laws."

Pertinent to this appeal is another provision, entitled "Electronic Delivery/Acceptance," which states:

> The Company may, in its sole discretion, decide to deliver any documents related to the RSUs by electronic means. The Participant hereby consents to receive such documents by electronic delivery and agrees to participate in the Plan through an on-line or electronic system established and maintained by the Company or a third party designated by the Company.

In January 2014, Guillory left his employment with Cameron to join a start-up company that directly competes with Cameron for business in the Niobrara shale. Several other Cameron employees from the Fort Collins office also joined the competitor.

### Trial court proceedings

Cameron sued several former Fort Collins employees, including Guillory, in Harris County District Court, seeking a temporary restraining order, temporary injunction, and a permanent injunction against them. Cameron based its suit against Guillory on the confidentiality agreement he signed early in his employment, and on the noncompetition provisions contained within the restricted stock agreement. Guillory defended the suit, in part by averring that he did not

6

recall reading or signing the stock agreement, and no Cameron employee had alerted him to the noncompete provision, not even when Guillory made plain his intentions to work with a competitor.

At the conclusion of a hearing on Cameron's request for a temporary injunction, the trial court entered findings of fact and conclusions of law, among them:

> On January 28, 2013, [Cameron] asserts that Guillory accepted and agreed to the [RSU agreement] online through E*Trade. Guillory allegedly opened the [RSU agreement] on-line and answered a prompt stating that he read and understood the Restricted Stock Unit Award Agreement. A record of Guillory's alleged agreement to the terms of the [RSU agreement] is set forth [in a hearing exhibit]. Upon his acceptance, 283 RSU's were deposited into this E*Trade account. The Court is not persuaded that this necessarily or probably constitutes a binding non-compete agreement under Texas law.

While the trial court enforced the confidentiality agreement, it declined to enforce the noncompetition provision of the restricted stock agreement.

**Discussion**

Cameron challenges the trial court's refusal to enforce the noncompetition provision within Guillory's restricted stock agreement. It first contends that the trial court erred in applying Texas law, rather than Delaware law, to analyze the formation and enforceability of the restricted stock agreement. Under Delaware law, Cameron argues, the noncompetition provision in the restricted stock

7

agreement is valid and enforceable. Guillory responds that Cameron waived this issue for appeal by failing to urge the applicability of Delaware law in the trial court. We disagree.

## I. Waiver

In its brief in support of temporary injunctive relief, filed on the day of the hearing, Cameron contended that the agreement was enforceable under Texas, Delaware, and Colorado law, but reiterated that "Delaware law should govern construction of the Non-Compete Covenant per the contractual choice of law provision in the Restricted Stock Unit Award Agreement." Cameron cited Delaware authority in support of its contention that the agreement was reasonable in scope and duration.

By timely presenting the question of the applicable governing law in its briefing to the trial court; Cameron preserved the issue for appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A) ("As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought . . . with sufficient specificity to make the trial court aware of the complaint . . . ."). The trial court declined to find that Guillory had agreed to the provisions within the restricted stock agreement; thus, although it adopted Delaware authority as a general conclusion of law, it did not apply

Delaware principles of law to resolve whether the parties had entered into a valid agreement.

Cameron again raised the choice-of-law issue in the hearing on its motion to reconsider, where the following exchange occurred:

Cameron: We believe that the law that should be applied in this case is Delaware law, the law chosen by the parties in their contract and under the *Newell* case that we've cited and provided to you that we believe that we have a probable right to relief. We believe that Texas law is in accord. Your honor has indicated that you disagree with that. But we would just note that under the *DeSantis* analysis, we do not believe that Texas law would apply in this case principally because Texas's connection to this case is solely the fact that Cameron has its headquarters here. Cameron's a Delaware corporation. And we believe that an agreement in this particular case, an agreement that deals with the issue of some stock in a Delaware corporation certainly has a reasonable relationship to Delaware, such that Delaware law is appropriate to apply.

Trial Court: And I understand what you're saying. And then the layer that's above that, of course, is the elements of the temporary injunction. And so the question then becomes whether you are—you're saying that Delaware law applies to the enforceability of the contract—of the noncompete itself.

Cameron: Yes, your Honor.

Trial Court: A separate issue is whether there's a likelihood of success on the merits because there was that additional layer and because I'm not certain whether it's Delaware or Texas law. And I will—and I also do not—I haven't

9

> made a ruling as to whether even if Delaware law applies, it would allow for this agreement. And I know you've shown me a case that suggests that it does. For all of those reasons, I didn't find a likelihood of success on the merits that would entitle you to a temporary injunction to enforce the noncompete, nonsolicitation.

> Cameron: Understood. I just wanted the choice of law position to be clear. We understood the Court's ruling in the findings.

Following the hearing, the trial court denied Cameron's motion to reconsider. The record demonstrates that Cameron preserved the choice-of-law issue for appellate review.

## II.     Injunctive Relief

Having held that Cameron did not waive its choice-of-law argument, we turn to Guillory's second response: that it is premature to analyze the applicable choice of law in an appeal from a temporary injunction.

### *Standard of review and applicable law*

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must show: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.—Houston

10

[1st Dist.] 2011, no pet.). The temporary injunction applicant bears the burden of production to offer some evidence of each of these elements. *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (quoting *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961); *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 897 (Tex. App.— Dallas 2006, no pet.). The applicant is not required to establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Walling v.Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Dallas Anesthesiology Assocs.*, 190 S.W.3d at 897. The decision to grant or deny an injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Id.*; *CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merit of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978).

### *Appropriateness of a choice of law determination*

Guillory contends that, because we do not consider the ultimate merit of the suit in reviewing the propriety of a temporary injunction, Cameron's legal

11

challenge, based on the validity and enforcement of the underlying agreement, is beyond our authority to review. According to Guillory, the choice-of-law questions that Cameron raises are "legally improper and premature merits questions that neither the trial court nor this Court could determine at the temporary injunction stage as a matter of law."

We disagree that a court must ignore a determinative choice of law issue in deciding whether a temporary-injunction applicant has met its burden for relief. In *Southwest Refining Co. v. Bernal*, 22 S.W.3d 425, 432 (Tex. 2000), the Texas Supreme Court rejected the notion that a trial court could rule on a petition for class certification without a thorough review of "the claims, defenses, relevant facts, and applicable substantive law" simply because the determination was a preliminary one. *See id*. at 435. In *Compaq Computer Corp. v. LaPray*, the Texas Supreme Court later applied its holding in *Bernal* to a choice-of-law question: it held that the trial court abused its discretion in failing to undertake a choice-of-law analysis at the class-certification stage, because the differences in law applicable to class members was critical to a proper evaluation of whether common issues would predominate at trial. 135 S.W.3d 657, 672–73 (Tex. 2004).

Similarly, in considering the propriety of temporary injunctive relief, the preliminary determination of whether an applicant has shown a probable right to the relief it seeks—that is, whether the applicant furnished some evidence tending

to support at least one of the legal theories it will urge at trial—entails a thorough review of the law applicable to the parties' claims and defenses. *See id.*; *see generally Intercont'l Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (explaining difference between analysis of "probable right to relief" for temporary injunction purposes and merits determination). Thus, we will reverse a temporary injunction order if it reaches a decision based on an inapplicable choice of law. *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 890 (Tex. 2010) (holding that trial courts abused discretion in applying Texas General Arbitration Act to deny arbitration where Federal Arbitration Act, which properly applied to agreements, preempted TGAA provisions that would otherwise render agreements unenforceable); *see also In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2000) (explaining that clear failure to analyze or apply law correctly constitutes an abuse of discretion, even in new or unsettled area) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996)).

## III. Delaware Law Applies

In answering the question whether Delaware law applies to determine the existence and enforceability of the noncompete provision, the Texas Supreme Court's recent decision in *Exxon Mobil Corp. v. Drennen* is instructive. *See* No. 12-0621, 2014 WL 9600951 (Tex. Aug. 29, 2014). In *Drennen*, the Court considered the choice of law applicable to a restricted-stock agreement between the

13

company and one of its former Texas executives. *Id.* at *1 The documents that accompanied the restricted stock awards in *Drennen* contained termination provisions that allowed ExxonMobil to terminate outstanding awards if a former employee accepted employment with a competitor. *Id.* The documents expressly provided that New York law applied. *Id.* at n.1.

To determine whether the choice-of-law provision was enforceable, the *Drennen* Court conducted the familiar choice-of-law analysis set forth in section 187(2) of the Restatement (Second) of Conflict of Laws. *See* 2014 WL 9600951, at *4. Section 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2). ExxonMobil showed that New York law provided consistency its administration of the incentive awards it made to employees in many states and countries. *See Drennen*, 2014 WL

14

9600951, at \*4. Also, ExxonMobil explained that New York has a well-developed body of law regarding financial transactions—securities and securities-related transactions generally, and employee stock and incentive programs specifically. *Id.* Based on that evidence, the Court held that section 187(2)(a) did not preclude application of New York law to the incentive program documents. *Id.*

In determining whether Texas had a materially greater interest in the enforcement of its laws under section 187(2)(b), the Court observed that ExxonMobil was a multinational corporation with a presence in New York and is listed on the New York stock exchange, and Drennen spent three years of his career with ExxonMobil in New York. *Id.* at \*3. But, the Court concluded, Texas had a materially greater interest than New York in the determination because Drennen resided in Houston, ExxonMobil was headquartered in Texas, and the incentive program documents were executed in Texas. *Id.*

The Court observed that the Texas public policy against restriction on competition did not factor into its analysis because Exxon's incentive program did not contain a covenant not to compete. *See id.* at \*7. The Court nevertheless revisited its prior position, announced in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), that noncompete provisions implicate Texas's fundamental public policy concerns, observing that "the policy concerns regarding

15

uniformity of law raised in *DeSantis* have changed in the past twenty-four years."

*Drennen*, 2014 WL 9600951, at *8. Specifically, the Court noted that:

> With Texas now hosting many of the world's largest corporations, our public policy has shifted from a patriarchal one in which we valued uniform treatment of Texas employees from one employer to the next above all else, to one in which we also value the ability of a company to maintain uniformity in its employment contracts across all employees, whether the individual employees reside in Texas or New York. This prevents the "disruption of orderly employer–employee relations" within those multistate companies and avoids disruption to "competition in the marketplace."

*Id.* (quoting *DeSantis*, 793 S.W.2d at 680). The Court determined that enforcement of the contractual choice of New York law did not contravene any fundamental public policy of Texas and held that New York law applied. *Id.* at *9.

Mindful of the Supreme Court's pronouncements in *Drennen*, we analyze the choice-of-law question posed in this case. The first determination of Restatement section 187(2)(b) is "whether there is a state the law of which would apply under section 188 of the Restatement absent an effective choice of law by the parties." *Drennen*, 2014 WL 9600951, at *5 (quoting *DeSantis*, 793 S.W.2d at 678). Under the Restatement, if Texas does not have a materially greater interest than Delaware in the application of the RSU agreement's noncompete provision to Guillory's circumstances, it is immaterial whether the application of Delaware law here would be contrary to a fundamental policy of Texas. *See id.* (citing *DeSantis*, 793 S.W.2d at 679). The record shows that Guillory is not, and never has been, an

16

employee of Cameron in Texas; that the transaction at issue occurred over the Internet; and any alleged representations involving that transaction took place in Colorado, where Guillory was employed.

Texas has no overriding interest in protecting an employment relationship between a multinational corporation and a resident of another state. "The drafters of the Restatement explained the rationale for section 187 by stating that '[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities.'" *Drennen*, 2014 WL 9600951, at * 9 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. e). Because Texas has no materially greater interest in this dispute, we hold that the trial court was required to apply Delaware law as specified in the parties' agreement in determining whether Cameron demonstrated a probable right to relief.

## IV. Probable Recovery

The trial court's findings of fact and conclusions of law declined to find that Cameron demonstrated a probable right to relief on its claim for breach of the noncompete agreement. Guillory contends that the parties had not formed an enforceable agreement by his electronic acceptance of the provisions of the restricted stock agreement.

As to contract formation, both Texas and Delaware have adopted state versions of the Uniform Electronic Transactions Act, which provides that, as long as the parties have agreed to conduct a transaction by electronic means, "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form," or "because an electronic record was used in its formation." DEL. CODE ANN. tit. 6, subtit. II, §§ 12A–107(a), B, 12A–108; *accord* TEX. BUS. & COM. CODE ANN. §§ 322.007, 322.008 (West 2009); *see Newell Rubbermaid, Inc. v. Storm*, C.A. No. 9398-VCN, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014) (holding that noncompete provisions in clickwrap agreements are enforceable).[1]

The RSU agreement contains an "Electronic Delivery/Acceptance" provision, which expressly memorializes Guillory's agreement to conduct the transaction by electronic means. Under Delaware law, Guillory's failure to carefully read the agreement before electronically accepting it does not render the agreement unenforceable. "A party to a contract cannot silently accept its benefits, and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance." *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 477 (Del. 1991) (internal quotation omitted), *quoted in Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.2d 665, 677 (Del. 2013).

---

[1]    Delaware courts view unpublished opinions as having precedential value. *See* DEL. SUP. CT. R. 14(b)(4).

18

At the temporary injunction hearing, Guillory did not point to any occasion in which Cameron misrepresented the contents of the agreement. The record therefore contains no evidence to support Guillory's effort to avoid the noncompete provision based on a lack of mutual assent to its terms.

The trial court entered appropriate conclusions of law concerning the general rules for enforceability of a noncompete agreement under Delaware law. They provide:

- Under Delaware law, restrictive covenants with employees are generally valid and enforceable. *See Knowles–Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 174–75 (Del. Ch. 1969) ("[I]t is now too well settled to be disputed that an agreement by an employee not to follow his trade or business for a limited time and during a limited period is not void as against public policy . . . ." (quoting *Capitol Bakers, Inc. v. Leahy*, 178 A. 648 (Del. Ch. 1935))).

- Restrictive covenants are enforced when they "(1) meet general contract law requirements, (2) [are] reasonable in scope and duration, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *TriState Courier & Carriage,Inc. v. Berryman*, Civ. A. No. 20574-NC, 2004 WL 835886, at *10 (Del. Ch. Apr. 14, 2004) (citing *Del. Express Shuttle, Inc. v. Older*, Civ. A. No. 19596, 2002 WL 31458243, at *11 (Del. Ch. Oct. 23, 2002); *Research & Trading Corp. v. Pfuhl*, Civ. A. No. 12527, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992)).

Applying these rules to the evidence proffered by Cameron concerning the noncompete provision applicable to Guillory, we conclude that Cameron showed a probable right to relief on its breach-of-contract claim. The noncompete provision

has a one-year duration precluding employment with a direct competitor against Cameron. Although undefined in geographic scope, Guillory did not present countering evidence requesting reformation of the covenant. We therefore hold that the trial court erred in denying temporary relief enjoining Guillory from activities that violate the agreement's noncompete provision.

## Conclusion

We hold that Cameron showed a probable right to relief on its claim against Guillory for breach of the noncompete provision of their restricted stock agreement. We therefore reverse the portion of the trial court's order that denies such relief and remand with instructions to grant temporary relief enjoining Guillory from violating the noncompete provision's terms. We leave undisturbed the remainder of the trial court's temporary injunction.


Jane Bland
Justice

Panel consists of Justices Higley, Bland, and Sharp.