**Opinion issued July 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00091-CV

_____

**NUEVA GENERACION MUSIC GROUP, INC., Appellant**

**V.**

**ISIDRO CHAVEZ ESPINOZA, P/K/A ESPINOZA PAZ, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-00749**

---

## MEMORANDUM OPINION

This is an appeal from the trial court's denial of a temporary injunction. Appellant, Nueva Generacion Music Group, Inc. ("Nueva"), sued appellee, Isidro Chavez Espinoza, a musician professionally known as Espinoza Paz ("Espinoza"), for breach of a settlement agreement that attempted to resolve conflicts arising out

of Nueva's professional representation of Espinoza. Nueva sought a temporary injunction restraining Espinoza from agreeing to bookings for his performances or accepting payments without notifying Nueva and paying its commissions and from interfering with Nueva's efforts to obtain bookings and sponsorships for him. The trial court denied the temporary injunction. Nueva argues that the trial court abused its discretion and failed to follow controlling law in denying the application for temporary injunction and that Espinoza cannot re-litigate settled claims to defend his alleged breach of the settlement agreement.

We affirm.

### Background

Nueva is an artist management company that represents musicians and obtains recording deals and bookings for performances, negotiates sponsorship deals, and otherwise develops and manages their artistic careers. In 2009, Nueva and Espinoza entered into an "Exclusive Personal Representation Agreement" ("Representation Agreement").

Under the Representation Agreement, Nueva agreed to provide Espinoza with "advice, consulting, and instruction" regarding endorsement and sponsorship agreements, publicity and promotion, "recording, distribution and music publishing agreements," scheduling performances and other events, and general "career decisions, business interests and general practices in the entertainment and music

2

industries." The Representation Agreement granted Nueva the authority "to act as the only Attorney in Fact" of Espinoza regarding the authorization to use his name, likeness, voice, and musical and artistic materials for publicity purposes; "to sign, execute and deliver for [Espinoza] . . . all and any agreement, document, and Artist Services contract, of talent and/or artistic, musical, and literary materials and others (including unlimited recording agreements)"; to collect and receive monies on Espinoza's behalf; and to "[m]aintain legal counsel" to collect on or enforce agreements on Espinoza's behalf.

In return, Espinoza agreed to pay a commission of 30% of the money he earned for a period of five years. He also agreed to inform Nueva of employment offers that he received and "to attend career commitments and to do what is necessary and desirable to promote [his] career and earning herein implied." The Representation Agreement provided Nueva with three "exclusive and irrevocable option(s) . . . to renew and extend the Initial Period for a term of 5 year(s)."

Espinoza became a successful and sought-after musician. He asserts that in 2012, he realized that Nueva had fraudulently procured the Representation Agreement and had breached its duties to him. Nueva alleges that as Espinoza gained exposure in the music industry through its promotion of him, he began to exclude Nueva from his career decisions. Espinoza subsequently pursued bookings on his own or through other talent agents.

In late 2013, Nueva sued Espinoza in Harris County for breaching the Representation Agreement. On December 15, 2013, Espinoza informed Nueva by letter that he was terminating his participation in the Representation Agreement, and he filed a counter-suit in California, asserting, among other causes of action, claims against Nueva for fraud and breach of fiduciary duty.

In 2014, Nueva and Espinoza entered into the Final Settlement Agreement ("FSA") to resolve both Nueva's suit against Espinoza and Espinoza's counter-suit in California. The FSA provided that Espinoza would pay Nueva $4,500,000 in three payments: $600,000 due February 28, 2014, $400,000 due March 11, 2014, and $3,500,000 due by December 31, 2014. It further stated: "Provided that [Espinoza] faithfully complies with the aforementioned payments in their entirety . . ., the [Representation Agreement] shall be considered canceled without the need for [Nueva] to take any action." The FSA provided that the Representation Agreement "shall continue in force, with the exception of the 30% commission," which Nueva agreed not to charge until December 31, 2014. It stated, "If the complete payment of $4,500,000.00 is not made before January 1, 2015 by [Espinoza] to [Nueva], then the [Representation Agreement] shall continue . . . in force and the 30% commission [shall be] payable to [Nueva] by [Espinoza] until the full $4,500,000 is paid[.]"

The FSA also stated that, following Espinoza's payment of the first $1,000,000, both parties would non-suit their claims. It provided,

> This is the entirety of the agreements between the parties in order to resolve the cases in Texas and California. [Nueva] and [Espinoza] hereby agree to release any claim or lawsuit that exists between the parties, with the exception of the agreements contained in this agreement or the [Representation Agreement], until [Espinoza] pays [Nueva] the amount of $4,500,000.00 according to the terms of this agreement.

The FSA was signed by both parties and their attorneys.

Espinoza paid only the first two payments. He continued to obtain bookings for performances on his own or through other talent agencies.

Nueva filed the present suit against Espinoza in January 2015, alleging that he had violated the terms of the Representation Agreement and the FSA by failing to pay $3,500,000 by December 31, 2014, by using other talent agents and booking agents to acquire work, and by refusing to participate in opportunities procured for him by Nueva. Nueva also alleged causes of action for breach of fiduciary duty and fraud for "depriv[ing] [Nueva] of rightful commissions," misrepresenting or concealing his true earnings, and "violat[ing] his duty to properly account for and timely pay [Nueva] its agreed upon commissions."

With its petition, Nueva filed an application for a temporary injunction. It asserted that "[t]he property and rights involved are unique and irreplaceable, so

5

that it will be impossible to accurately measure, in monetary terms, the damages caused by [Espinoza's] conduct."  It asked that Espinoza be enjoined from

> agreeing to bookings for his performances without notifying [Nueva]; accepting or receiving payments under the [Representation Agreement] without paying the correct commissions to [Nueva]; interfering with [Nueva's] bookings and tours of [Espinoza's] performances; interfering with [Nueva's] negotiated sponsorship opportunities; interfering with [Nueva's] contract negotiations with third parties under the [Representation Agreement]; attempting to wrongfully prevent [Nueva] from performing under the [Representation Agreement]; continu[ing] his evasion and threats to this Court's jurisdiction by forum shopping; wrongfully multiplying proceedings with the intent to thwart the Court's dominant jurisdiction . . .; harassing and forcing [Nueva] to the great financial burden of having to defend itself against vexatious proceedings . . .; [and] attempting to prevent [Nueva] from fulfilling its contractual and legal obligations.

The trial court held a hearing on the application for a temporary injunction. Nueva introduced the Representation Agreement and FSA into evidence.  It also provided the testimony of Nueva representative Marisa Caballero and copies of Espinoza's promotional materials and performance schedules as evidence that Espinoza was booking performances using other representatives and without consulting Nueva.  Caballero testified that Espinoza under-reported his earnings to Nueva and did not pay the required commissions.  Caballero also testified that, due to "all of these issues and commotion," Nueva had lost contracts and that the dispute with Espinoza "is hurting our business."  She stated that Nueva's loss of Espinoza's services harmed the business because "he's a unique artist . . . that was

6

making more than any other artist in the regional Mexican genre.  And we had him in our company.  And of course there were 19 people working for this project just from our company."  Caballero stated that she did not believe that Nueva would be able to collect the $3.5 million due under the FSA because of the difficulty of enforcing contracts in Mexico.

At the temporary injunction hearing, Nueva emphasized that it was seeking to enforce the FSA.  Its attorney argued that Espinoza got the benefit of the FSA in not having to pay a commission to Nueva, but "now [he doesn't] want to pay what [he is] supposed to pay."  Nueva argued that it "just want[ed] to make sure that at the end of the day—once we have a final trial or a final judgment in this case—we are able to collect it.  And if the Court does not grant the injunction, we do not believe—and the testimony is undisputed that we will not be able to collect the judgment."  Nueva thus asked the trial court "for an injunction to prohibit [Espinoza] from engaging other representatives."

On January 26, 2015, the trial court denied Nueva's application for a temporary injunction.  This interlocutory appeal followed.[1]

## Temporary Injunction

In its first issue, Nueva complains that the trial court erred in denying its application for a temporary injunction.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon 2015) (providing for interlocutory appeal from order granting or denying temporary injunction).

## A.      Standard of Review

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Cameron Int'l Corp. v. Guillory*, 445 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru*, 84 S.W.3d at 204.  To obtain one, "the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*; *Guillory*, 445 S.W.3d at 845.  "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

The temporary injunction applicant bears the burden of production to offer some evidence of each of these elements. *Guillory*, 445 S.W.3d at 845 (citing *In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002)).  The applicant is not required to establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Id.* (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993)).

Whether to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204; *Guillory*, 445 S.W.3d 845.  We

should reverse an order on injunctive relief only if the trial court abused that discretion. *Butnaru*, 84 S.W.3d at 204. "A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts." *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The reviewing court must not substitute its judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Butnaru*, 84 S.W.3d at 204; *Guillory*, 445 S.W.3d at 845. "Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merit of the underlying case." *Guillory*, 445 S.W.3d at 845 (citing *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978)).

**B.    Analysis**

In its first issue, Nueva argues that the trial court abused its discretion and failed to follow controlling law in denying its application for a temporary injunction. Espinoza argues, in part, that Nueva did not establish a probable, imminent, and irreparable injury that cannot be adequately compensated in damages. *See Butnaru*, 84 S.W.3d at 204; *Guillory*, 445 S.W.3d at 845. We agree with Espinoza.

9

Nueva alleged causes of action against Espinoza for breach of the Representation Agreement and the FSA for failing to pay the $3,500,000 payment due by December 31, 2014; using other talent agents and booking agents to acquire work and not remitting the payments for that work to Nueva in accordance with the terms of the FSA; and refusing to participate in opportunities procured for him by Nueva in order to satisfy the FSA. Nueva also alleged causes of action for breach of fiduciary duty and fraud based on Espinoza's alleged failures to pay commissions due to Nueva under the terms of the Representation Agreement and the FSA. It sought to enjoin Espinoza from "agreeing to bookings for his performances without notifying [Nueva]"; "accepting or receiving payments under the [Representation Agreement] without paying the correct commissions to [Nueva]"; and interfering with Nueva's representation of him by booking performances and negotiating contracts for sponsorships.

To be entitled to a temporary injunction prohibiting Espinoza from engaging in these actions, Nueva had to establish a probable injury—i.e., it had to tender evidence of imminent harm, irreparable injury, and an inadequate legal remedy. *See Butnaru*, 84 S.W.3d at 204 (setting out elements necessary to establish right to temporary injunction); *Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 273 (Tex. App.—San Antonio 2012, no pet.). An injury is not irreparable if the injured party can be adequately compensated in damages. *Butnaru*, 84 S.W.3d at 204.

10

"[G]enerally, a court will not enforce contractual rights by injunction, because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available." *Id.* at 211; *Walling*, 863 S.W.2d at 57 ("Damages are usually an adequate remedy at law, and the requirement of demonstrating an interim injury is not to be taken lightly.").

Nueva has failed to demonstrate that its alleged injuries lack an adequate legal remedy. *See Butnaru*, 84 S.W.3d at 204, 211. All of Nueva's claims relate to its allegations that Espinoza breached the Representation Agreement and FSA by withholding commissions or failing to perform career obligations obtained for him by Nueva in order to satisfy the terms of the FSA. Even Nueva's claims for breach of fiduciary duty and fraud are based on Espinoza's alleged failure to perform his contractual duties and obligations under the Representation Agreement. It argued at the temporary injunction hearing that it was seeking to enforce the FSA, which addressed these and similar breaches and reduced them to money damages. Nueva argued that it sought to prohibit Espinoza from engaging other representatives because

> it want[ed] to make sure that at the end of the day—once we have a final trial or a final judgment in this case—we are able to collect it. And if the Court does not grant the injunction, we do not believe— and the testimony is undisputed that we will not be able to collect the judgment.

It provided evidence that Espinoza had been using different booking agencies to book his performances. However, none of this evidence demonstrates a harm that cannot be adequately compensated in damages following a trial on the merits of Nueva's claim that Espinoza breached the FSA.

Nueva argues that the trial court abused its discretion by misapplying the law to the established facts of this case. It argues that the Texas Supreme Court's holding in *Mission Independent School District v. Diserens* required the trial court to grant its application for a temporary injunction. *See* 188 S.W.2d 568 (Tex. 1945). However, *Diserens* is distinguishable. In that case, the school district and Diserens, a music teacher, entered into a contract by which Diserens committed herself to teach for a period of one year and further agreed that she would not teach anywhere else in the State of Texas during the contract period. *Id.* at 568. On her first day of employment, Diserens "breached her contract and in violation of its terms went to [another city], where she took up teaching music and directing a band in the public schools." *Id.* at 568–69. The school district sought "to enjoin her from breaching the negative promise in the contract not to teach during the contract period elsewhere in the State of Texas." *Id.* at 569. The trial court denied the injunction, and the court of appeals affirmed the ruling of the trial court. *Id.*

The supreme court reversed, citing the "settled rule 'that where a person agrees to render services that are unique and extraordinary, and which may not be

rendered by another, and has made a negative covenant in his agreement whereby he promises not to render such service to others, the court may issue an injunction to prevent him from violating the negative covenant in order to induce him to perform his contract.'" *Id.* at 569 (citing *Cincinnati Exhibition Co. v. Marsans*, 216 F. 268 (D.C.E.D. Mo. 1914)). The court reasoned:

> [Diserens] is a music teacher of extraordinary and unique talents and has engaged herself to devote those talents to teaching in the schools at Mission and not elsewhere in Texas during the contract period. The plaintiff school district finds difficulty in getting another teacher of her qualifications. It offers to extend to the defendant the benefits of the contract of employment she has breached. She ought not to be allowed to breach her contract at her pleasure and affirmatively violate the promise she had made not to teach anywhere else in this State during the time embraced by the agreement. Accordingly, we conclude she should have been enjoined from violating the negative covenant in her contract.

*Id.* at 569–70.

Here, by contrast, Nueva argued at the temporary injunction hearing that it was seeking to enforce the FSA. The FSA itself is not a contract for personal services, but rather a contract agreeing to the amount of money Espinoza was required to pay to settle Nueva's claims against him based on his obligations under the Representation Agreement, which Nueva claimed he had breached. In *Diserens*, the defendant teacher agreed to be employed by the school district and provide her services exclusively to that school district. *Id.* Here, the agreement by Espinoza to use Nueva's promotion and management services to the exclusion of

13

other agents survived in the FSA only conditionally to reinforce Nueva's ability to collect money damages from Espinoza under the terms of the FSA. We conclude, therefore, that Nueva has not alleged or provided evidence of any harm that cannot be remedied by money damages. *See Walling*, 863 S.W.2d at 57 ("Damages are usually an adequate remedy at law[.]").

Nueva has thus failed to establish all three elements required to demonstrate its entitlement to a temporary injunction. *See Butnaru*, 84 S.W.3d at 204 (holding that to establish right to temporary injunction, applicant must plead and prove "a probable, imminent, and irreparable injury," i.e., an injury that cannot be adequately compensated in damages). Accordingly, we conclude that the trial court did not abuse its discretion in denying the temporary injunction. *See id.* at 204 (holding that court of appeals cannot overrule trial court's decision unless trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles); *INEOS Grp. Ltd.*, 312 S.W.3d at 848.

We overrule Nueva's first issue.

In its second issue, Nueva argues that the trial court erred to the extent that it considered Espinoza's efforts to re-litigate settled claims to defend his alleged breach of the FSA. However, our review of the trial court's decision is limited to the validity of its temporary injunction order, and we have already held that the trial court did not abuse its discretion in denying the temporary injunction because

Nueva did not establish that it has no adequate legal remedy. *See Guillory*, 445 S.W.3d at 845. We do not consider arguments that go to the merits of the underlying case, and it is not necessary that we analyze this argument by Nueva in order to determine whether the trial court properly denied the temporary injunction. *See id.*

We overrule Nueva's second issue.

### Conclusion

We affirm the order of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.